YAZOO & MISSISSIPPI VALLEY RAILROAD COMPANY *v.* EDWARD
CHRISTMAS.

[42 South. Rep., 169.]

1. CARRIERS OF GOODS. *Delay in shipment. Damages.*

Where, having been billed by mistake of the initial carrier to the wrong destination on a connecting line, goods were returned to the correct destination, but the connecting carrier refused to deliver them to the consignee unless paid its charges for the extra haul, and the consignee, refusing to pay the same thereby causing further delay, sued the original carrier, the measure of his damages was the value of the use of the goods during the first delay and necessary expenses incurred in informing the defendant of the non-receipt of the goods, excluding the expense of trying to locate them after giving the first notice and the costs of securing an adjustment whereby the goods were released without the payment of the extra freight.

2. SAME. *Action. Instructions.*

In an action against a carrier for damages resulting from delay in the delivery of goods, caused by a mere mistake in billing the same, it is erroneous to instruct the jury to assess damages in case of unreasonable delay, without any direction as to the rule by which the damages should be assessed.

3. SAME.   *Punitive damages.*

    Mistake of a carrier's clerk in billing goods to the wrong destina-
tion, which the carrier immediately corrected on notice by send-
ing out a tracer, and the refusal of the connecting carrier to
deliver the goods without payment of charges for the extra haul
resulting from the mistake, do not make a case of willfulness,
oppression, or wanton disregard of the shipper's rights by the
original carrier, authorizing punitive damages for the delay.

4. SAME.   *Action.   Instruction.*

    Where goods were transported an extra distance by a connecting
carrier owing to a mistake of the original carrier, and the con-
necting carrier demanded payment for such extra haul before
permitting the shipper to take his goods, the shipper was not
bound to pay such charge before receiving his goods, but it was
error to so charge as an abstract proposition, in an action by the
shipper to recover from the original carrier for delay resulting
from his refusal to pay the charge before the matter was adjusted.

FROM the circuit court of Warren county.

HON. JOHN N. BUSH, Judge.

Christmas, the appellee, was the plaintiff, in the court below,
and the railroad company, the appellant, was defendant there.
From a judgment in favor of plaintiff the railroad company
appealed to the supreme court.

Plaintiff's suit was for recovery of damages resulting from
delay in the transportation of certain machinery, accepted by
the defendant under its bill of lading at Mound Bayou, Miss.,
for shipment to Delta Point, Louisiana. The declaration alleged
that the delay was caused by the wilful negligence of the de-
fendant's freight agent at the point of shipment, in consigning
the machinery to a wrong destination, as a result of which sixty
days elapsed from the acceptance of the machinery by defend-
ant before it was delivered to plaintiff.   The opinion further
states the facts of the case.

*Mayes & Longstreet,* and *C. N. Burch,* for appellant.

It will be apparent to the court that the delay in this case
was caused by a mistake on the part of the agent of the defend-

ant company at Mound Bayou. The destination of the shipment was in another state and on another line of railroad. Defendant's agent at Mound Bayou, through mistake, wrote in the bill of lading the name of "Delhi," instead of "Delta Point," Delhi being a station on the line of the Vicksburg, Shreveport & Pacific Railway, some distance from Delta Point. When the shipment was delivered to the Vicksburg, Shreveport & Pacific Railway under a bill of lading calling for transportation to Delhi, that carrier very properly transported the shipment to the point named in the bill of lading. For such mistake the appellant is, of course, responsible. But the Vicksburg, Shreveport & Pacific Railway certainly had a right to make charge against some one for the transportation of the shipment to Delhi and back again to appellant's line of railroad. The ultimate liability would be upon appellant, and the appellee, Christmas, if compelled to pay out anything to the Vicksburg, Shreveport & Pacific Railway Company, had the right to recover the same from appellant. The measure of damages under such circumstances should be the amount of any excess charges he might have had to pay, if these charges could not have been reduced, plus his special damages, if any, as a direct consequence of the delay. No such special, peculiar or exceptional damages as those claimed by appellee, and by the court below allowed to be shown in evidence, can be recovered in the absence of notice of such exceptional consequences to the carrier at the time of the delivery of the shipment to it, or at the time the contract of affreightment was made. "Where the proximate result of the delay is the loss of the use of the goods, as, for instance, where the goods consisted of machinery, the measure of damages is the value of the use during the time of detention; that is in general the rental value." 6 Ency. of Law and Procedure, 449; *Priestly* v. *Railroad Co.,* 79 Am. Dec., 369; *Texas Railroad Co.* v. *Hassell,* 58 S. W., 654; *Railroad Co.* v. *Gilbert,* 22 S. W., 760.

Our own courts uphold the proposition above set forth. *Railroad Co.* v. *Ragsdale,* 46 Miss., 458; *Illinois, etc., Railroad Co.* v. *Brookhaven Machine Co.,* 71 Miss., 663 (s.o., 16 South. Rep., 252); *Silver* v. *Kent,* 60 Miss., 129; *American Express Co.* v. *Jennings,* 86 Miss., 329 (s.o., 38 South. Rep., 347).

If the appellant in this case is to be charged with all the delay which might be termed "unreasonable" the period would not exceed, approximately, twenty days, and these days would cover a period when, had the appellee been in charge of the machinery, he would have put it to little use. Appellee, delivered this machinery to appellant August 18; he testified that five days would have been ample time for it to have reached Delta Point from Delhi. It reached its correct destination September 21; on the next day, or second day, he received notice thereof, and went down and found the machinery awaiting him. As a rule, ginning does not begin until the last of August or first of September; consequently, if the shipment had been transported with due diligence, it is improbable, under the evidence, whether appellee could have had the machinery in operation before the middle of September.

Even if the delay amounted to twenty, or even thirty, days, then, according to appellee's own testimony, the recovery in this case should not have been one-half of the amount allowed by the jury. For appellee testified that at the season of the year when the delay occurred the "usable" value of his gin, completed and in operation, was about $10 a day. If there had been a delay of thirty days caused by the mistake his recovery should not have exceeded, in any event, $300. It thus appears, since the verdict was for $600, that, in so far as compensatory damages go, the judgment exceeded what should have been due by 100 *per centum.*

All through the proof offered for appellee runs the grave error of testimony seeking to establish against appellant liability for items which have been more than once expressly disallowed

by this court; as, for example, items of expense incurred by the appellee in going to Mound Bayou on a trip of investigation, the value of his time, expense of trips to Delta Point to ascertain if the machinery had arrived and whether the excess demanded by him on account of the wrongful transportation to and from Delhi had been credited; the expense of his board, use of horses and teams, and value of his time and of the time of men whom he had carried with him on the above-mentioned trips. *American Express Co.* v. *Jennings,* 86 Miss., 330 (s.c., 38 South. Rep., 347), and cases there cited.

It was the duty of the appellee, Christmas, to have paid to the Vicksburg, Shreveport & Pacific Railway Co. the charges required by that company, amounting to $17.50 on account of the shipment of the machinery from Delta Point to Delhi and return. Appellee has never declared that he was unable to do so. Such action would have reduced his damages. And for the amount so advanced by him he could and would easily have recovered from appellant. Yet, while the above proposition is unquestionably sound under the law, the court below refused to instruct the jury that he should have paid these charges. On the contrary, the court, in the instructions granted to the plaintiff, expressly charged the jury that Christmas was not bound to pay the overcharge in freight demanded of him for the reshipment of his freight from Delhi to Delta Point. What was the consequence of such refusal to pay this overcharge on the part of appellee? He allowed the machinery to remain at Delta Point after it had been returned from Delhi, from September 21 until October 15, on the flimsy pretext that he would not take it until the Vicksburg, Shreveport and Pacific Railway Company had wholly released the claim for overcharge. The delay from September 21 until October 15 was attributable to plaintiff's refusal to perform his duties under the law and to pay the trifling sum of $17.50. As the value of his machinery to him, according to his testimony, would have been $10 a day, his action in undergoing a delay from September 21 to October 15,

to save $17.50, was in law unwise, and must result to his own loss.

It was error in the court below to give the second, third and fifth instructions for the appellee. The second instruction was to the effect that if the jury believed from the evidence that the machinery was delayed in transportation from Mound Bayou to Delta Point, "and that because of the negligence of the defendant railroad company the said shipment was unreasonably delayed in its transportation and delivery, the jury shall find for the plaintiff and assess damages." This instruction imperatively directed the jury to "assess damages," if the jury should determine that the shipment was unreasonably delayed. It contained no limitation as to the character and extent of the damages to be allowed; nor any statement that the jury should allow damages only if the delay injured the plaintiff. There was no statement in the instruction that only nominal damages should be allowed if the unreasonable delay caused no actual damage. Nothing is said therein to the effect that the jury should assess only such damages as may have been warranted by the evidence, nor that the jury should confine any award to compensatory damages. The instruction was almost a peremptory charge to assess damages, without any proper limitation on the award.

The third instruction told the jury that Christmas was not bound to pay the overcharge in freight demanded of him, but that he had the right to demand and receive his property at Delta Point upon the payment of the proper freight rate from Mound Bayou to Delta Point. As herein above stated, it was obligatory on the appellee to reduce his damages, and to such end he should have paid the overcharge in freight.

The fifth instruction told the jury that they were warranted in assessing punitive damages. There is absolutely no testimony in this case to warrant such an instruction. The whole trouble grew out of the mistake of the agent in writing the name of one station for another of almost similar name. There

was no wrong or oppression. It is true that the appellee in his declaration made the necessary averment for recovery of punitive damages; but the facts in evidence do not sustain the declaration. The rule warranting the imposition of damages in cases similar to the case at bar is clearly stated in *Silver* v. *Kent,* 60 Miss., *supra,* 124, approved in *Express Co.* v. *Jennings,* 86 Miss., *supra.* Under the facts in evidence this instruction must accordingly be held to be erroneous.

*Harris Dickson, for* appellee.

The appellee, when he delivered to appellant's agent at Mound Bayou the gin outfit for transportation to Delta Point, La., notified the agent of the character of the shipment, and informed him that he desired to have the freight transported to Delta Point as quickly as possible, so as to be ready to begin ginning cotton by the last of August or the first of September. The agent informed the appellee that it would not take more than five or six days for the gin to be transported to Delta Point. The contract price for transportation of the machinery was $33.15. Christmas then went to Delta Point, expecting his gin to follow him in due course. After thirty days he had not received it, and inquiries at Delta Point availed nothing. He went back to Mound Bayou to inquire about the gin outfit, and the appellant's agent at that place informed him that the shipment should have been received at Delta Point about August 25. The property was finally located at Delhi, La., a station some distance west of Delta Point; the outfit having been shipped to Delhi by reason of the mistake of appellant in billing out the same. The appellee at this time informed the appellant's agent at Mound Bayou of the continued damage being done him by the delay. Christmas returned to Delta Point, and afterwards received notification from appellant informing him of the arrival at Delta Point of the gin machinery, and that it would be delivered upon the payment of $50.70. This $50.70 was an overcharge, and included the local freight charge from Delta

Point to Delhi and return. Appellee was willing to pay the $33.15, representing the original contract price of transportation, but was not willing to pay more. Appellant's agent at Delta Point declined to deliver him the property unless the excess charges were paid. The matter was fully explained to appellant's agent at Vicksburg. This agent told Christmas to pay the excess freight, and it would be refunded him in a short time. Christmas declined to do this. The agent then told appellee that he would wire to New Orleans and have the outfit released upon payment of the proper charges. Yet it was three weeks later before this was done, and before Christmas was permitted by appellant to receive his freight. Because of such negligence on the part of appellant, and because of the wanton refusal of appellant to correct the error, the gin outfit, which was shipped from Mound Bayou on August 18, was finally delivered to Christmas on October 15, sixty-one days later. Excluding a reasonable time for transportation, this would leave a negligent delay of from fifty-two to fifty-five days. These facts are absolutely uncontroverted, and no effort was made to deny them.

The appellee was entitled to have his property promptly transported to the destination specified in the contract, and to receive the same upon his payment of the contract charge for such transportation. The appellant company had no right to erroneously send his gin outfit to a wrong point, and then hold him liable for an excessive freight charge.

Counsel for the appellant earnestly insisted that the expenses of trips to Mound Bayou in trying to discover where his gin outfit was, and why he had not received it, should not be recoverable by appellee. The *Ragsdale case,* 46 Miss., 458, requires a consignee to "make reasonable exertions to reduce his damages as much as practicable." The purpose of the trips made by appellee was to reduce his damage. Had he not made such trips the gin would probably still be at Delhi, and the appellant would be liable for two years' delay instead of for the time

claimed. The jury were most carefully instructed that Christmas was required to use reasonable exertions to reduce his damage, and unless they should believe such trips necessary they should not consider them in fixing damage. If, however, the expenses of the trips as claimed, $20, were erroneously charged against appellant, the case should not be reversed on such account, but *remittitur* be entered. *Vicksburg, etc., Railroad Company* v. *Lawrence,* 78 Miss., 86 (s.c., 28 South. Rep., 826).

The property shipped, consisting, as stated, of a gin outfit, property designed for a special purpose and having a "usable" value. Accordingly the measure of damages for its delay was the "usable" value for the period of its unnecessary detention by appellant. 6 Ency. Law & Pr., 449 ; *Priestly* v. *Railroad Company,* 79 Am. Dec., 369 (26 Ill., 205). "The carrier is chargeable in all cases of negligent delay with the value of the ordinary use of property having a usable value, after the time when it should have made delivery at the place of destination. For delay in the transportation of machinery the value of its use for the time it was detained is the measure of damages." Sutherland on Damages, 905, note; *Railroad Company* v. *Hassell,* 58 S. W., 54; *Railroad Company* v. *Gilbert,* 22 S. W., 760; *Swift* v. *Railroad Company,* 47 N. E., 1015; *Leach* v. *Railroad Company,* 35 N. Y. Supp., 305.

In *Vicksburg, etc., Railroad Company* v. *Ragsdale,* 46 Miss., on page 485, the opinion states: "If Ragsdale were compensated for the value of the use of such machinery while deprived of it by the negligence of the carrier, and also for the expense of idle hands awaiting its arrival, and costs incurred in looking after it, and injuries to it caused by delay, about all of the circumstances are taken into the estimate upon which courts and juries can securely rely." These are the precise elements of damage upon which this claim of appellee, Christmas, is based, upon which the jury were carefully instructed, and upon which the verdict was had.

Counsel for appellant rely upon the *Jennings case,* 86 Miss., 330 (s.c., 38 South. Rep., 347), for a reversal of this case, on the ground of alleged erroneous instructions as to damages. In that case the article shipped by express was a piston rod to belong to a gin. So far as the carrier knew or the package disclosed, it might have belonged to a locomotive or a merry-go-round. There was nothing to charge the carrier with knowledge of any special damage which might result from delay in transportation or delivery; no element of wilful negligence in the case. When the package was delayed the carrier used every effort to locate it, promptly reported it lost, and paid for it. Under the ruling of that case, as shown in the language of the opinion on pages 338 and 339 of the report, the appellee here would be entitled to the very items of damages to which opposing counsel's protests are directed. The *Jennings case* affirmed the *Ragsdale case,* and also *Silver* v. *Kent,* 60 Miss., 124, upon both of which appellee relies.

The second instruction granted to appellee was correct. It merely instructed the jury that if they believed that the property was negligently delayed they should find for the plaintiff, Christmas; in subsequent instructions the jury were carefully charged as to the measure of damages; instructions must all be considered as a whole.

Opposing counsel claim that the fifth instruction granted to the plaintiff was erroneous; this instruction was in regard to punitive damages and largely based upon the case of *Silver* v. *Kent, supra.* The facts in evidence show that there was good ground for a finding of punitive damages.

MAYES, J., delivered the opinion of the court.

The record in this case shows that Christmas delivered to the railroad company at Mound Bayou, Miss., a certain lot of gin machinery, which was to be shipped to Delta Point, La. The machinery was delivered to the company about the 18th day of

August, 1904, and the agent at Mound Bayou, in making out the bill of lading, inadvertently wrote in the bill, as the destination of the machinery, Delhi, La., instead of Delta Point, La.; the latter being the true destination of the machinery. The machinery was duly forwarded on appellant's line from Mound Bayou, by way of Vicksburg, at which place the appellant company connected with the Vicksburg, Shreveport & Pacific Railway, and there delivered the machinery to the connecting carrier, which was transported by it to Delhi, La. In due course of time the machinery reached Delhi, and remained there for about three weeks, unclaimed and uncalled for. Christmas waited about thirty days, and, not receiving the machinery, began to make inquiry for it, and went to Mound Bayou personally to investigate. He was informed by the agent at Mound Bayou that there must have been some mistake in the billing over the Vicksburg, Shreveport & Pacific Railway, and that he (the agent) would send out a tracer after it. The agent did this, and in a few days located the machinery at Delhi, La., and gave orders to have same shipped back to Delta Point, on the line of the Vicksburg, Shreveport & Pacific Railway. The machinery reached Delta Point, finally, about the 20th or 21st day of September, and the company notified Christmas that it had received the freight and that the same was held subject to his order; the charges being $50.70. When Christmas shipped the machinery from Mound Bayou the agent there had agreed that the charges to Delta Point should be $33.15; but the Vicksburg, Shreveport & Pacific Railway, the connecting carrier, added to these charges the transportation charges for carrying the machinery to Delhi and then back again to Delta Point; the additional charges aggregating $17.55. After Christmas received the notice that the machinery was at Delta Point, he took his team and went after it, and offered the agent at Delta Point the sum of $33.15, the charges that had been agreed upon by him with the agent at Mound Bayou. The agent at Delta Point refused to accept this sum, and demanded

the full sum of $50.70, which Christmas refused to pay, where-upon he began efforts to get the machinery without paying the additional charges, leaving it in possession of the Vicksburg, Shreveport & Pacific Railway Company at its proper destination, from about the 24th of September to the 15th of October, on which latter day, the matter having been adjusted, the agent at Delta Point accepted the original charge and delivered the machinery to Christmas. Christmas made several trips to Delta Point and to Vicksburg to see about having the charges reduced, and was told by the agent at Vicksburg to pay the charges and that he would see that the excess freight was returned to him, but that he would have to telegraph to New Orleans to get this permission. Christmas declined to pay the extra charges, and continued his efforts to get the machinery. He claims to have incurred considerable expense in his efforts to do this.

The evidence shows conclusively that there was no wilfulness or oppression on the part of the appellant company, but the mistake which occurred was one of pure inadvertence. This being the case, the measure of damages was the value of the use of the machinery for the time which it was detained. Appellee was not entitled to recover for the time lost and expense incurred by him in going to and from Mound Bayou, and to Vicksburg and other places, in 'an effort to have the railroad company reduce the extra charge of $17.55, or in trying to locate the machinery after he gave the first notice to the carrier of its non-receipt by him; but the full measure of his damage was compensation for the time he was deprived of the use of the machinery by reason of the delay of the railroad company, and any necessary expense incurred in informing the carrier of its non-receipt. Were there no error in the instructions, there is no theory upon which the verdict for $600 could be allowed to stand in this case, when viewed in the light of appellee's testimony. It is shown by his own testimony that he could have obtained this machinery, about the 24th of September, on the

payment of the extra charge of $17.55, and that he permitted this machinery to remain with the railway company until the 15th of October simply because he declined to pay the extra charge. He was bound to do all he could to reduce his damage, and if he had paid the $17.55 he would have reduced that damage to the extent of the value of the use of the machinery from the 24th of September to the 15th of October, and also reduced it by such expense as he incurred in going back and forth to Vicksburg and Delta Point. It is shown by plaintiff's own testimony that the value of the use of the machinery to him was $10 per day, and that it took about five days in the ordinary course for the machinery to be shipped from Mound Bayou to Delta Point. He was notified on the 24th of September that the machinery was at its proper destination. Therefore, according to his own testimony, he was out of the machinery about thirty days, the usable value of which was $10 per day, or $300 in gross, yet the jury awarded as damages $600.

It was error in the court to give the second, fifth, and third instructions for appellee. The second instruction tells the jury that if they believed from the evidence that the gin stand and other machinery delivered to the defendant company at Mound Bayou, for shipment to Delta Point, was by the negligence of the company unreasonably delayed in its transportation and delivery, the jury shall find for plaintiff and assess damages. This is an imperative instruction to the jury to assess damages if they believed the shipment was unreasonably delayed, without any qualification or direction to them as to the rule by which they shall be governed in so doing. It does not tell them what damages they are warranted in assessing, nor does it tell them that they shall only assess such damage as the evidence may show appellee has suffered. This we think was error.

The fifth instruction tells the jury that they are warranted in assessing punitive damages. There is absolutely no testimony in this case which would warrant the jury in awarding punitive damages. There was no wilfulness, or oppression, or wanton

disregard of appellee's rights. There was nothing except a simple mistake, without design, and the measure of appellee's damage was such sum as it took to compensate him for the use of the machinery during the time of its delay. *Express Co.* v. *Jennings,* 86 Miss., 329 (s.c., 38 South. Rep., 374); *Illinois, etc., Railroad Co.* v. *Brookhaven Machine Co.,* 71 Miss., 663 (s.c., 16 South. Rep., 252); *Silver* v. *Kent,* 60 Miss., 129; *Railroad Co.* v. *Ragsdale,* 46 Miss., 458; *Railroad Co.* v. *Gilbert,* (Tex. Civ. App.), 22 S. W., 760.

We also think, on the facts in this case, the third instruction was erroneous. By it the jury was told that Christmas was not bound to pay the overcharge in freight demanded of him, but that he had the right to demand and receive his property at Delta Point upon the payment of the proper freight rate from Mound Bayou to Delta Point. This is a correct announcement of the law as an abstract proposition, but it is erroneous when applied to the purposes of this suit. Appellee was not bound to pay the overcharge in order to get his machinery, if the machinery alone was the thing sued for; but he is bound to pay the overcharge and take out his machinery under the circumstances presented by this record, when he brings suit for damages for the unreasonable delay of the machinery, and undertakes to make the appellant company pay him for the time he is kept out of its use.

*Reversed and remanded.*