New Orleans & N. E. R. Co. *v.* J. H. Miner Saw
Mfg. Co.

[78 South. 577, Division A.]

1. CARRIERS. *Delay in delivery. Special damages.*

Where a carrier is not informed by the shipper of the special damages likely to flow from a breach of the contract of affreightment at the time the contract is made it cannot be made liable for these special damages by being informed at a subsequent date of them, while the goods are still in the possession of the carrier at the point of origin.

2. SAME.

Special damages are only recoverable when the carrier is informed at the time the contract is made of the special circumstances from which these damages will flow.

3. CARRIERS. *Delay in shipment. Measure of damages.*

Where there was unreasonable delay in a shipment, but there was no change or flunctuation in the market value of the commodities comprising the shipment between the time the shipment would have reached its destination if handled without unreasonable delay, and the time it actually arrived at

destination and the articles were not damaged and there was no notice to the carrier that special damages would be sustained. In such case the shipper would be limited to a recovery of the rental value of the shipment for the time of the unreasonable delay.

Appeal from the circuit court of Lamar county.
Hon. A. E. Weatherby, Judge.

Suit by the J. H. Miner Saw Manufacturing Company against the New Orleans & Northeastern Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*A. S. Bozman* and *Ben F. Cameron, Jr.,* attorneys for appellant.

If the plaintiff had proved his case in the regular way the burden would certainly be upon him to prove that the notice of the special damages was given before, or at the time of the making of the contract. See, *Dorrance & Co.* v. *International & G. N. R. R. Co.,* 126 S. W. 694.

Such is a necessary part of plaintiff's case and he could not recover the damages claimed unless this proof were made. It must appear positively, therefore, from the agreed statement of facts that the notice was given at the time required by law, and we submit that a casual reading of the agreed statement of facts will disclose that it is nowhere stated that such notice was given before, or at the time of the signing of the bill of lading. In as much as the duty rested on appellee to show affirmatively that notice of the special damages was given at the time and in the manner prescribed by law, its failure so to do is fatal to its right to recover the damages sought in this case, which are conceded to be special damages.

Even if the notice referred to in the supplemental statement of facts had been given before the contract

was made, we submit that the same was not sufficient to hold the appellant liable for the extraordinary damages claimed in this case under the decisions of this state. We have in mind two decisions, especially, where the notice given to the carrier was much stronger than the notice claimed in the present case, but this court held the notice in each case insufficient to entitle the plaintiff to the special damages. The cases referred to, are: *A. & V. Ry. Co.* v. *McKenna,* 104 Miss. 843, 16 So. 823; *Y & M. V. R. R. Co.* v. *Jacobson,* 112 Miss. 158, 72 So. 889.

We believe that if the court will read the supplemental statement of facts in the light of these two decisions, as well as the others cited in our original brief, it will be impelled to the conclusion that the alleged notice wholly fails to measure up to the standard required to fix liability on a carrier for special damages.

The second proposition urged by appellee is, that the notice given to appellant four or five days after the contract of affreightment had been made, may render the appellant liable for damages accruing after such notice. No authorities are cited in support of this proposition, and we have found none which will bear appellee out in this contention. We refer the court to the authorities cited in our original brief which hold the contrary view.

The court of Alabama, in the case of *Pilcher* v. *C. of G. A. Ry. Co.,* 46 So. 765, quotes from Hutchinson on Carriers the following passage, which lays down the rule we are asserting: "It is the well-settled rule that special damages can be recovered from the carrier when the transportation has been delayed, only where it is shown that the shipper informed the carrier, at the time the contract was made, of the special circumstances requiring expedition in the shipment, . . . and although the carrier may have been notified of such special circumstances in time to have prevented a delay, if such notice was given after the contract of transporta-

tion had been entered upon, it would not operate to modify the contract or subject the carrier to liability for special damages arising from a subsequent delay. This is said to be a crucial fact which must be both alleged and proved." The supreme court of Tennessee held in the case of *I. C. R. R. Co.* v. *Johnson & Fleming,* 94 S. W. 600, 116 Tenn. 624; *G. C. & S. F. Ry. Co.* v. *Cherry,* 129 S. W. 152. See, also, to the same effect, *C. I. R. & P. Ry. Co.* v. *Elevator & Light Co.,* 87 S. W. 753.

Counsel quotes from a decision rendered by this court is the case of *Delta Table & Chair Co.* v. *Y & M. V. R. R. Co.,* 63 So. 272.

As sustaining his position in this case, we submit that the very language quoted by counsel clearly differentiates that case from the case at bar. In that case the carrier was advised in detail of the purpose for which the shipment was made and the consequences which would follow its failure to arrive at destination on a certain date. The agent of the carrier assured the shipper that the transportation would be completed by that date. This notice was given according to the language of the court in its opinion. At the time the contract was made, the alleged notice in the present case meets none of these requirements.

Nor does the Alabama case cited by counsel in 69 So. 343, fit the case at bar. In that case, appellee obtained a judgment in the lower court and a motion was made by appellant for a new trial on the ground that the verdict rendered was against the weight of the evidence. The court, after reviewing the evidence, held that: "However, that may be, we cannot say, under the rule governing the review here of a trial court's action in refusing to grant a motion for a new trial as against the weight of evidence, that, either as to the right of recovery or the amount of recovery, there is a palpable failure of the evidence to support the finding of the jury upheld by the trial court."

We submit that the facts as agreed upon by the parties bring this case entirely within the decisions of this court cited in our briefs, and that the court below erred in allowing plaintiff to recover the full invoice the judgment rendered by the court below should be reversed and a judgment entered here for the appellant.

*W. A. Shipman,* for appellee.

We do not take issue with our friends on the other side concerning the citations of authorities. Every one of the cases cited is the law as applied to the facts in each particular case, but each and every one bears about the same relation to the instant case and the facts here involved that the barking of a dog has to its wagging its tail; every case cited by counsel is in accord with the well-established general rule, relative to the measure of damages for unreasonable delay in the transportation of goods. Therefore, we submit that the court will not deem it necessary, in order to affirm the judgment below to overrule, explain or modify a single one of the decisions cited in the brief of the appellant, which were decided by this court.

It is agreed there was unreasonable delay in the transportation of the goods. The well established and universally accepted rule in this connection, as we understand, it is, that a carrier will not be liable in special damages for the unreasonable delay in the transportation of goods, or on account of other special circumstances not apparent from the transaction itself, unless he has notice of the facts which caused, or might cause, special loss or damage; and this notice should be given when the goods are delivered for transportation. Subsequent notice, however, of the effect of further delay, after the goods have been delivered, may render the carrier liable for damages

after that time, where it is shown that he was negligent in the premises, as for instance, in failing to trace and find the goods, etc.

The agreed statement of facts show beyond cavil that before the abortive effort of the defendant to transport these goods, it had notice of the special circumstances that might cause special damage to the shipper; further, and moreover, four of five days after the delivery of the goods to the carrier for transportation in accordance with the contract made and entered into between the parties, while it appears that the president of the appellee company was casually looking around the depot of the appellant he found the identical stuff, still in the hands of the carriers, at the point of origin. He made demand then and there on the appellant to rush the goods forward without any further delay, otherwise, as he informed the defendant, they would arrive too late for the purchaser's purpose; that they must arrive at the point of destination within thirty days from the date of the shipment. This statement is manifestly true, by reason of the fact shown that Mr. Carlin, after refusing the shipment on its arrival, having had his needs supplied in the meantime by express shipment, in duplicate by the appellee, offered for the entire shipment the exact value of the one article in the shipment shown to be standard, namely the big saw, all the other stuff being made special for Carlin, and he having already, perhaps, had a lifetime supply of such specials, cared nothing for them, but the price offered for the shipment shows clearly and conclusively that he was merely offering to buy the big saw, which, being standard could be used anywhere at any time. The defendant has already received the benefit of the sale of the goods by its connecting carrier, having been credited with the net proceeds thereof by the plaintiff prior to the institution of this suit; and surely the appellee should be made whole; he ought not to have had those specially made articles thrown back on his

hands by appellant, when as the facts show he might never have received an offer for them.

We have no desire to weary the patience of the court by extending the length of this brief beyond reasonable bounds; therefore, we are content to rest our case upon the finding of the trial court, as set out in the record, and with the citation of one or two cases that we consider germain to the facts and the law will close our discussion. In *Delta Table & Chair Co.* v. *Y. & M. V. R. Co.,* 63 So. 272, this court by justice Cook held: "There is no doubt from the record that the carrier was negligent, and that at the time the contract was made the carrier was fully advised of the probable consequences of its negligence." And, therefore, the plaintiff should recover.

In *C. of G. R. R. Co.* v. *Goodwater, Mfg. Co.,* 69 So. 343, the Alabama court of appeals, after stating the facts and showing that the evidence tended to prove that the delay caused what was practically equivalent to the entire loss to the consignee, and, if so, he was justified in refusing to receive the shipment. Wherefore, the court refused to reverse the trial court in refusing to grant defendant a new trial. Yet, it is to be noted, in this case, nowhere does it appear that the carrier had notice of any special circumstances that might become the basis for a claim for special damages, in the event of unreasonable delay in transportation; the court simply holding that the facts had been passed on in the lower court, and refused to reverse and put the trial judge after such finding in the lower court: in other words, the Alabama court refused to do what counsel is here asking that this honorable court do. We submit that it is not the practice of this court to put the trial court in error on a finding of facts, unless it plainly appears that a palpable miscarriage of justice has occurred, and we further respectfully submit that substantial justice has been done in this case.

We, therefore, respectfully submit that the case will be affirmed by this honorable court, as no other course could possibly be the basis of an impartial decision.

SYKES, J., delivered the opinion of the court.

This suit originated in the justice of the peace court, and was duly appealed to the circuit court, where it was tried upon the following agreed statement of facts:

"On July 11, 1913, J. H. Miner Saw Manufacturing Company, plaintiff, shipped from Lumberton, Miss., a consignment of saws to James Carlin, Pagosa Springs, Colo., a distance of two thousand one hundred three miles. This shipment arrived at destination on August 21, 1913, and consignee was notified on the same day, being present when the shipment arrived. On September 3, 1913, plaintiff filed with the defendant a claim of one hundred ninety-one dollars and seventy-five cents, same being the invoice value of this shipment. Copy of the invoice is filed herewith as Exhibit A. On September 12, 1913, notice was given by the Denver & Rio Grande Railroad Company, delivering carrier, to the J. H. Miner Saw Manufacturing Company, consignor, that said shipment remained on hand at destination, having been refused by the consignee. Said notice requested immediate orders for disposition. On the back of this notice an indorsement appears over the signature of the J. H. Miner Saw Manufacturing Company to the effect that claim had been filed for this shipment and that disposition would not be furnished. The original notice and indorsement on the back thereof is hereto attached as Exhibit B. On November 26, 1913, the defendant requested plaintiff to furnish immediate disposal instructions on this shipment; said letter being attached hereto as Exhibit C. On February 3, 1914, original consignee, James Carlin, offered the Denver & Rio Grande Railroad Company, delivering carrier, one hundred fifteen dollars for the shipment in question. On February 6, 1914, this offer was submitted to the

plaintiff, and on February 12, 1914, plaintiff instructed the said delivering carrier to complete the sale and turn over the shipment to said James Carlin. On March 19, 1914, said delivering carrier notified plaintiff that this sale had been made and asked for disposition of the proceeds. The above correspondence is attached hereto as Exhibits E, F, G, and H hereto. On June 17, 1914, draft was paid by said delivering carrier to the J. H. Miner Saw Manufacturing Company for eighty-six dollars and twenty-five cents, the amount remaining after deducting freight and storage charges, twenty-eight dollars and seventy-five cents. The freight charges on this shipment, had same been returned to the consignor, would have been twenty-two dollars and seventy cents.

'At the instance of the consignee the above order was duplicated and shipped by express, arriving at destination at about the same time the shipment in controversy arrived. It is further agreed that the shipment in controversy met with unreasonable delay; that same was not damaged in transit; that there was no change of fluctuation in the market value of the commodities comprising this shipment between the time shipment would have reached destination if handled without unreasonable delay and the time it actually arrived at destination.

"Supplemental Statement of Facts.

"'It is further agreed in this case that four or five days after the shipment was delivered to the defendant, and after instructions had been given by the plaintiff to defendant's agent that same was a special shipment and a request made for tracing the same through to destination, the president of the plaintiff company discovered the shipment in the depot of the defendant at Lumberton, and that upon demand of defendant's agent as to cause of delay was informed by such agent that shipment had left his station and had been unloaded at Poplarville, another station of defendant, and from

there returned to Lumberton for reshipment; that the president of the said plaintiff company then demanded that the shipment be sent forward without further delay, stating that same was a special shipment, and that it must be delivered to the consignee within thirty days from the date of the original shipment, otherwise it would arrive too late; and that he again demanded the said shipment be traced through to its destination which the agent of the defendant then and there agreed and promised to do; that plaintiff made frequent inquiries of the agent of the defendant as to cause of the delay in delivery, but was unable to ascertain said cause, and then was compelled to fill the order by express thirty days or more after the said shipment was delivered to the defendant for transportation to the consignee at the destination marked thereon, and on the bill of lading issued by the defendant; that all of this shipment, except the big saw, invoice value one hundred fifteen dollars, was made special for the consignee; and that plaintiff did not carry the same goods regularly in stock.''

The net amount sued for in the justice of the peace court was one hundred five dollars and fifty cents, or the value of the shipment of saws, less eighty-six dollars and twenty-five cents, the draft already paid appellee. The case was tried before the circuit judge by agreement and judgment was rendered in favor of the appellee for the amount sued for, from which judgment this appeal is prosecuted. The bill of lading is made an exhibit to the agreed statement of facts, and shows that the shipment was "consigned to order of J. H. Miner Saw Works—notify James Carlin.''

The damages recovered by the appellee in the court below in this case are special, and not general, damagss. It is the contention of the appellee that the agent of the appellant company, some days after the bill of lading was signed, and while the goods were still in the possession of the initial carrier, and while they were

in the warehouse of said carrier at the point of origin, was notified that this was a special shipment of goods and would be valueless unless delivered within thirty days. The agreed statement of facts, however, shows that at the time the contract of affreightment was made the agent of the carrier was not informed by the shipper of these facts. The question thus sharply presented to the court is this: Whether or not the carrier, not being informed of the special damages likely to flow from a breach of the contract of affreightment at the time the contract was made, can be made liable for these special damages by being informed at a subsequent date of them, while the goods are still in the possession of the carrier at the point of origin. This court has held, in a number of cases, that special damages are only recoverable when the carrier is informed at the time the contract is made of the special circumstances from which damages will flow. The court, in the case of *Railroad Company* v. *Lyon,* 107 Miss. 777, 66 So. 209, Ann. Cas. 1917D, 171, used the following language:

"Special damages can be recovered from the carrier for delayed transportation only where it is shown that the shipper informed the carrier, at the time the contract was made, of the special circumstances requiring prompt transportation and delivery. This is the rule in this state, and seems to be universal."

To the same effect are the cases of *Railroad Company* v. *Jacobson,* 112 Miss. 158, 72 So. 889; *Railroad Company* v. *McKenna,* 104 Miss. 843, 61 So. 823; *Railroad Company* v. *Allen,* 106 Miss. 275, 63 So. 572. Practically the same contention made by the appellee in this case was made in the case of the *American Express Company* v. *Jennings,* 86 Miss. 329, 38 So. 374, 109 Am. St. Rep. 708. In responding to this contention in that case the court said:

"It is not enough to give notice to the carrier after the contract is made, and the shipment has started in its transportation, because the liability of a carrier cannot

be increased by the subsequent knowledge of facts that did not exist in the contemplation of the parties at the time the engagement was entered into. It then became an effort upon the part of one of the contracting parties to inject a stipulation into the contract after it was entered into, that increases the liability of the other, that was not mutually considered when the engagement was made.''

A careful examination of the above-cited authorities shows that, in order for special damages of this character to be recovered, the carrier must be informed at the time the contract of shipment is made of the special circumstances from which these damages will flow.

The statement of facts shows that the saws were not damaged in transit, and that there was no change or fluctuation in the market value of the commodities comprising this shipment between the time the shipment would have reached its destination if handled without unreasonable delay and the time it actually arrived at destination. Since no special damages can be recovered in this case, the only damages recoverable are those which were within the contemplation of the parties at the time the contract was made. The articles themselves were not damaged; there was no fluctuation of the market value of these articles; therefore we conclude that the appellee in this case would be limited to a recovery of the rental value of the shipment for the time of the unreasonable delay. *American Express Company* v. *Jennings,* 86 Miss. 329, 38 So. 374, 109 Am. St. Rep. 708; *Brothers* v. *I. C. Railroad Company* (Ala. App.) 77 So. 423; *Railroad Company* v. *Christmas,* 89 Miss. 686, 42 So. 169.

*Reversed and remanded.*