**AETNA INSURANCE COMPANY**

v.

**The UNITED STATES.**

No. 371–70.

United States Court of Claims.

March 17, 1972.

Edward Gallagher, Washington, D. C., attorney of record, for plaintiff.

Ira Mark Bloom, Washington, D. C., with whom was Asst. Atty. Gen. Scott P. Crampton, for defendant; Philip R. Miller and Joseph Kovner, Washington, D. C., of counsel.

Before COWEN, Chief Judge, LARAMORE, Senior Judge, and DAVIS,

COLLINS, SKELTON, NICHOLS, and KASHIWA, Judges.

## ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

COWEN, Chief Judge:

By the parties' cross-motions for summary judgment, we are called upon to decide again whether the right of the United States to set off the unpaid contract balance against taxes owed it by a Government contractor is superior to a claim to the same contract retainage by a Miller Act [1] surety under its payment bond.

The material facts are not in dispute. Allied Electrical Company, Inc., hereinafter Allied, entered into a contract dated February 11, 1965, with the General Services Administration to provide certain electrical work at Howard University, Washington, D. C. Plaintiff Aetna Insurance Company was the surety upon the performance and payment bonds provided by Allied pursuant to Miller Act provisions.

The date of substantial completion under the contract was established by the contracting officer as October 4, 1966, but this date was extended by extensions of time to January 16, 1967. On October 10, 1967, a major supplier left unpaid by Allied obtained a default judgment against the contractor in the amount of $18,525.39. On April 19, 1968, the Internal Revenue Service served a notice of levy upon the General Services Administration for taxes, penalties, and interest owed to the United States by Allied in an amount finally determined to be $14,130.07. Thereafter, plaintiff paid the default judgment, taking an assignment of the supplier's claim against Allied,[2] and requested the General Services Administration to pay over the remaining balance under its contract with Allied.[3] Plaintiff was ad-

---

1. 49 Stat. 793 (1935), 40 U.S.C. § 270a et seq.

2. A prior assignment to the supplier from Allied of monies to become due under the contract had been made on April 25, 1967.

3. The balance owed under the contract upon completion of the contract work was the sum of $15,766.95. As a result of the above-mentioned extensions of time, however, liquidated damages in the sum

vised, however, that the matter was being referred to the General Accounting Office for settlement because of the outstanding notice of levy. The General Accounting Office denied plaintiff's claim, setting off the remaining contract balance against the unpaid tax liability. Plaintiff requested reconsideration, and the Comptroller General affirmed the setoff by letter dated July 16, 1970.

It should be noted at the outset that plaintiff does not ask us to overrule our decision in Barrett v. United States, 367 F.2d 834, 177 Ct.Cl. 380 (1966). The dispute over contract retainages in *Barrett* was between a Miller Act payment bond surety, which had paid the claims of laborers and materialmen against their contractor, and the United States, which had set off against the retainages an amount for tax deficiencies assessed against the contractor. We held that the surety's claim was subordinate and inferior to the right of the United States to set off the amount of taxes owed to it by the contractor. The touchstone in *Barrett* was the Supreme Court's decision in United States v. Munsey Trust Co., 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947), which permitted the Government to set off an amount owed to it by its contractor against retainages claimed by the Miller

Act surety under its payment bond. In the course of that opinion, however, the Court suggested a different outcome where the surety completed the Government's contract pursuant to a performance bond.

Later cases, relying on *Munsey Trust*, have held that a Miller Act surety who completes the contract on default of the contractor is entitled to the contract retainages in the hands of the Government, free from setoff for taxes owed by the contractor. However, each of these decisions reaffirmed the *Munsey* rule in situations where the Government's right of setoff is challenged by the surety under its payment bond. See Security Insurance Co. v. United States, 428 F.2d 838, 192 Ct.Cl. 754 (1970); Trinity Universal Insurance Co. v. United States, 382 F.2d 317 (5th Cir. 1967); cert. denied 390 U.S. 906, 88 S.Ct. 820, 19 L. Ed.2d 873 (1968); Aetna Casualty and Surety Co. v. United States, 435 F.2d 1082 (5th Cir. 1970).

It is plaintiff's principal contention here that the distinction made in these cases between the priority rights of a performance bond surety and those of a payment bond surety is no longer valid in light of the enactment into law of the Federal Tax Lien Act of 1966.[4] Plain-

---

of $6,240 were assessed against Allied, reducing the unpaid contract balance to $9,526.95, the amount plaintiff seeks in this suit.

4. 80 Stat. 1125. Only insofar as it is relevant herein, the Federal Tax Lien Act of 1966 amended section 6323 of the Internal Revenue Code of 1954 to read as follows:
"*Sec. 6323. Validity and priority against certain persons.*
"(a) Purchases [sic], holders of security interest, mechanic's lienors, and judgment lien creditors.—The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary or his delegate.
     *       *       *       *       *
"(c) Protection for certain commercial transactions financing agreements, etc.—

"(1) In general.—To the extent provided in this subsection, even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid with respect to a security interest which came into existence after tax lien filing but which—
"(A) is in qualified property covered by the terms of a written agreement entered into before tax lien filing and constituting—
     *       *       *       *       *
"(iii) an obligatory disbursement agreement, and
"(B) is protected under local law against a judgment lien arising, as of the time of tax lien filing, out of an unsecured obligation.
     *       *       *       *       *
"(4) Obligatory disbursement agreement.—For purposes of this subsection—
"(A) Definition.—The term 'obligatory disbursement agreement' means an agreement (entered into by a person in the

tiff says that the language of section 6323 of the Internal Revenue Code of 1954,[5] as amended by the Federal Tax Lien Act of 1966, gives sureties upon both payment and performance bonds, without distinction, priority over a federal tax lien.[6] Section 6323(a) gives a holder of a security interest priority over the tax lien, while section 6323(h) (1) broadly defines a security interest to mean "any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability." More specifically, section 6323(c) (1) provides that security interests in qualified property arising from obligatory disbursement agreements, entered into before the tax lien is filed, are protected against the lien even though funds are advanced under the agreement after the filing of the tax lien. Where the obligatory disbursement agreement is a surety contract ensuring the performance of a contract between the taxpayer and another person, section 6323(c) (4) (C) (i) provides that the term qualified property includes "the proceeds of the contract the performance of which was ensured."

Relying heavily on the above-cited provisions of the statute, plaintiff argues that the *Munsey Trust* rule has been rendered inoperative by the enactment of the Federal Tax Lien Act of 1966 and that the application of the *Munsey* rule in this case would defeat the broad remedial purpose Congress had in mind when the law was passed.

Defendant agrees that the Federal Tax Lien Act of 1966 did indeed change the prior law with respect to the priority of the federal tax lien over other specified security interests. However, defendant maintains that the Act was concerned only with the priority to be accorded the federal tax lien and was not intended to and did not affect the ruling in the *Munsey Trust* case with respect to the Government's right of setoff.

We agree with defendant. . The fundamental difficulty with plaintiff's argument is that the plain words of amended section 6323 grant priority only in terms of the lien imposed by section 6321. The statute does not purport to cover the situation at hand where the United States seeks to set off against taxes

course of his trade or business) to make disbursements, but such an agreement shall be treated as coming within the term only to the extent of disbursements which are required to be made by reason of the intervention of the rights of a person other than the taxpayer.

"(B) Limitation on qualified property. —The term 'qualified property', when used with respect to an obligatory disbursement agreement, means property subject to the lien imposed by section 6321 at the time of tax lien filing and (to the extent that the acquisition is directly traceable to the disbursements referred to in subparagraph (A)) property acquired by the taxpayer after tax lien filing.

"(C) Special rules for surety agreements.—Where the obligatory disbursement agreement is an agreement ensuring the performance of a contract between the taxpayer and another person—
"(i) the term 'qualified property' shall be treated as also including the proceeds

of the contract the performance of which was ensured, * * *
*　　*　　*　　*　　*
"(h) Definitions.—For purposes of this section and section 6324—
"(1) Security interest.—The term 'security interest' means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth."

5. All section references hereinafter are to the Internal Revenue Code of 1954.

6. Pursuant to section 6321, a lien arises in favor of the United States when a person liable for a tax neglects or refuses to pay it after demand.

owed to it by its contractor funds remaining unpaid under the contract.

Plaintiff asserts that a resort to the legislative history of the Federal Tax Lien Act of 1966 is neither necessary nor proper to a decision in this case, and that the plain terms of the Act should persuade us to render judgment in its favor. As an alternative argument, however, plaintiff maintains that, while the statute may speak only of tax liens, it was the congressional policy, as shown by the legislative history surrounding the passage of the law, to grant a payment bond surety priority over the Government's right of setoff in the factual circumstances involved in this case. We have examined the legislative history relied on by plaintiff, and can find no support therein for its position. Rather than revealing the policy asserted by plaintiff, the historical discussion is restricted to situations involving the tax lien in competition with the interests of other creditors. Hearings before the House Committee on Ways and Means on H.R. 11256 and H.R. 11290, 89th Cong., 2d Sess. 37 and 38 (1966); H. Rep.No.1884, 89th Cong., 2d Sess. 9 (1966); S.Rep.No.1708, 89th Cong., 2d Sess. 9 (1966), U.S.Code Cong. & Admin.News, p. 3722.

Also damaging to plaintiff's position is the following statement contained in the Treasury Department's technical explanation of that part of the proposed act dealing with the protection of surety companies making payments under a bond entered into before notice of a lien is filed:

> Finally, nothing in this bill is intended to reverse U. S. v. Munsey Trust Co. (1947) 332 U.S. 234 [67 S. Ct. 1599, 91 L.Ed. 2022] which held that the United States may set off amounts due it for taxes against amounts owned [sic] by the United States to the taxpayer under a contract. [Hearings before the House Committee on Ways and Means, *supra*, at 48.]

This written expression of the views of the Treasury Department was made a part of and attached to a written statement submitted by the Assistant Secretary of the Treasury at the hearing held by the House Committee on Ways and Means on March 2, 1966. The statement was made a part of the record and ordered to be printed. When the bill was favorably reported out by the House Ways and Means Committee and by the Senate Finance Committee, respectively, it was noted that the Treasury Department had urged the adoption of the bill. H.Rep.No.1884 at 3; S.Rep.No.1708 at 3. It would certainly be extraordinary for both committees to represent to Congress that the Treasury urged the adoption of the bill if, contrary to the views expressed by the Assistant Secretary of the Treasury, there was any intent on the part of either committee to reverse the holding in *Munsey Trust*.

There is yet another aspect of the legislative history which militates strongly against plaintiff's argument as to the congressional intent. It is clear from the same committee report that Congress intended that several of the provisions of the bill would change the existing law as set forth in certain decisions of the Supreme Court. Where this was the congressional purpose, the report stated that designated sections changed the results reached in such decisions, each of which was cited in the report. See H.Rep.No.1884 at 37 with respect to United States v. Buffalo Savings Bank, 371 U.S. 228, 83 S.Ct. 314, 9 L.Ed.2d 283 (1963), and at 46 with respect to United States v. Pioneer American Insurance Co., 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed. 2d 770 (1963) and United States v. Equitable Life Assurance Society of United States, 384 U.S. 323, 86 S.Ct. 1561, 16 L.Ed.2d 593 (1966). We find no similar indication in the legislative history that Congress intended to reverse the result in the *Munsey Trust* case.

We conclude from the foregoing discussion of the legislative history that Congress intended in the Federal Tax

Lien Act of 1966 to legislate only with respect to the priority accorded the Federal tax lien, and did not intend to affect the result in *Munsey Trust*.

Plaintiff relies on Central Bank v. United States 345 U.S. 639, 73 S.Ct. 917, 97 L.Ed. 1312 (1953) and Home Indemnity Co. v. United States, 313 F. Supp. 212 (W.D.Mo.1970) as additional support for its contention that allowing the Government to prevail over the surety by right of setoff herein avoids the Federal Tax Lien Act of 1966. The *Central Bank* case, however, turned on the construction of the Assignment of Claims Act of 1940, and, as such, is of no help to plaintiff.

In *Home Indemnity*, the court was faced with several factual issues that are not presented here. However, plaintiff urges us to decide this case on the District Court's holding that the exercise of the Government's right of setoff avoids "the statutory scheme provided for the collection of taxes, whereby certain privileges and processes are afforded to the taxpayer." 313 F.Supp. at 216.[7] With deference to the able District Judge who wrote the opinion, we do not adopt that holding as a basis for decision in the factual situation before us. In our view, the statutory collection procedures and the Government's right of setoff are separate remedies and both are available to the Government.

In sum, we adhere to our decision in Barrett v. United States, *supra*, and hold that the Federal Tax Lien Act of 1966 did not affect the Government's right to set off against taxes owed to it by its contractor the unpaid contract balance claimed by plaintiff under its payment bond. Defendant's cross-motion for summary judgment is therefore granted, plaintiff's motion is denied, and the petition is dismissed.

[7.] The Government informs us that after notice of appeal was filed in *Home Indemnity*, the *Munsey Trust* issue in the case was settled by the parties. Brief for defendant at 11, n. 3.