**BURLINGTON NORTHERN INC.**

v.

**The UNITED STATES.**

No. 406–71.

United States Court of Claims.
July 14, 1972.

William R. Power, Chaska, Minn., atty. of record, for plaintiff.

Gerald L. Schrader, Washington, D. C., with whom was Asst. Atty. Gen., Harlington Wood, Jr., for defendant.

Before COWEN, Chief Judge, LARA-MORE, Senior Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA and KUNZIG, Judges.

## ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

KASHIWA, Judge.

Plaintiff in this case sues to recover $1,422.94 which defendant withheld from funds otherwise due plaintiff. Defendant deducted the amount as a charge for plaintiff's unauthorized use of defendant's flatcar. For the reasons stated below, we hold that defendant is entitled to compensation for this use. However, since the parties disagree as to the amount of the damages that defendant has sustained, we refer the case to a trial commissioner for fact findings in accordance with this opinion.

The undisputed facts are that on July 21, 1966, the Naval Supply Depot tendered to plaintiff's predecessor, the Great Northern Railway Company, at Seattle, Washington, an empty flatcar owned by the United States Department of Defense. It was to be shipped to the Sharpe Army Depot at Lathrop, California, via Great Northern and Western Pacific railroads, with an interchange between their lines to take place at Bieber, California. A notation on the bill of lading read, "FREE UNDER MILEAGE TARIFF—SERIES 7."

Instead of complying with the transportation contract, represented by the uniform straight bill of lading, Great Northern somehow lost track of the flatcar. It was not until October 17, 1966, that defendant succeeded in locating the car in Canada and had it returned to its

possession at Granite City Army Depot, Granite City, Illinois. Great Northern's car mileage reports made to the Department of Defense during July, August, and September showed that the car (identified as Car DODX (USAX) 39554) had travelled 1,093 miles on Great Northern's tracks before making its way to Canada on September 4, 1966.[1]

On October 27, 1966, defendant presented a claim to Great Northern Railway in the amount of $4,350 which was based on a rental or lease rate of $50.00 per day for the 87 days that defendant was deprived of the use of its flatcar. Great Northern agreed to pay no more than four cents per mile, provided for flatcars in Hinsch's Mileage Tariff. After repeated efforts to collect from Great Northern proved fruitless, defendant, on May 29, 1968, set off against moneys owing Great Northern under Public Voucher 155874 the amount of $1,422.94. That final claim was based on the rental rate of an outleased flat railroad car at $500.00 per month, or $16.66 per day, for the 87 days that defendant was deprived of the use of its flatcar, less the amount ($26.-

48) remitted by the carrier for car mileage of 662 miles at four cents per mile.[2]

The plaintiff, a Delaware corporation and common carrier by railroad in interstate commerce, became entitled to all properties and franchises of the former Great Northern Railway Company by merger effective March 2, 1970. On May 12, 1971, plaintiff filed suit in the Court of Claims seeking recovery of the $1,422.94 offset by defendant against moneys owing to its predecessor, Great Northern Railway Company.

■ Plaintiff makes two arguments in support of its petition. First, it claims that defendant's deduction of the $1,422.94 is not authorized by the Interstate Commerce Act because that amount represents a claim for damages rather than an "overcharge." The Government is authorized by 49 U.S.C. § 66 to deduct overcharges by any carrier from other amounts due that carrier.[3] As is apparent from the definition given that term, an overcharge occurs only when the carrier submits a bill for services that is in excess of the amount properly due the carrier. This is quite different from a claim for damages. The defendant admits this, and we

---

1. It was used to carry freight during 662 miles, and it was carried empty during 431 miles.

2. This is in error, for Great Northern actually paid the mileage rate for both loaded and empty miles, a total of $43.72. Therefore, under defendant's theory, it should have set off only $1,405.70.

3. Government traffic; payment for transportation; deduction of overcharges.
   Payment for transportation of the United States mail and of persons or property for or on behalf of the United States by any common carrier subject to the Interstate Commerce Act, as amended, or the Civil Aeronautics Act of 1938, shall be made upon presentation of bills therefor, prior to audit or settlement by the General Accounting Office, but the right is reserved to the United States Government to deduct the amount of any overcharges by any such carrier from any amount subsequently found to be due such carrier. The term "overcharges" shall be deemed to mean charges for transportation services in excess of those applicable thereto under the tariffs lawfully on file with the Interstate Commerce Commission and the Civil Aeronautics Board and charges in excess of those applicable thereto under rates, fares, and charges established pursuant to section 22 of this title: Provided, however, That such deductions shall be made within three years (not including any time of war) from the time of payment of bills: Provided Further, That every claim cognizable by the General Accounting Office for charges for transportation within the purview of this section shall be forever barred unless such claim shall be received in the General Accounting Office within three years (not including any time of war) from the date of (1) accrual of the cause of action thereon, or (2) payment of charges for the transportation involved, or (3) subsequent refund for overpayment of such charges, or (4) deduction made pursuant to this section, whichever is later. As amended Aug. 26, 1958, Pub.L. 85–762, § 2, 72 Stat. 860.

agree. See Chicago, M. St. P. & P. R. R. v. Alouette Peat Products, 253 F.2d 449 (9th Cir. 1957).

█ Plaintiff's second argument presents the real issue in this case. It claims that unless the deduction is authorized by 49 U.S.C. § 66, *supra,* it is unlawful. In other words, plaintiff argues that the Interstate Commerce Act extinguished the Government's common law right of offset in the situation. We could not disagree more emphatically.

The general rule of the Government's right of offset is clearly stated in United States v. Munsey Trust Co., 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947), wherein the Supreme Court stated at page 239, 67 S.Ct. at page 1602, "The government has the same right 'which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due him.'" This procedure has been followed in many areas,[4] including transportation cases, C & H Transportation Co. v. United States, 193 Ct.Cl. 872, 436 F.2d 480 (1971); Johnson Motor Transport v. United States, 137 Ct. Cl. 892, 149 F.Supp. 175 (1957).

█ Plaintiff relies on Chicago & N. W. Ry. Co. v. Lindell, 281 U.S. 14, 50 S. Ct. 200, 74 L.Ed. 670 (1930), to support its argument that a setoff for damage claims is improper. We do not agree with plaintiff's interpretation of that case. The Supreme Court held that the practice of determining claims of shippers for loss or damage in suits brought by carriers to collect the transportation charges was not repugnant to the Hepburn Act, 49 U.S.C. § 6(7), 34 Stat. 587, which prohibited carriers from accepting anything but cash in payment of their charges. The Court expressly stated that "[t]he adjustment of defendant's demand by counterclaim in plaintiff's action rather than by independent suit is favored and encouraged by the law. That practice serves to avoid circuity of action, inconvenience, expense, consumption of the courts' time, and injustice." 281 U.S. at 17, 50 S.Ct. at 201. According to plaintiff's reading, there can be no deduction of a damage claim against transportation charges except by adjudication of a court. But that is exactly the situation we have here. Other courts have also approved this procedure, Yale Express System, Inc. v. Nogg, 362 F.2d 111, 114, n. 2 (2d Cir. 1966). We believe that this is an inherently sound procedure which contributes to efficient resolution of opposing claims.

The foregoing conclusion then raises the next question of whether, after Great Northern's payment of $43.72 calculated according to Item 265 of Hinsch's Mileage Tariff 7–Y, I.C.C. H–29, defendant had any unsatisfied claim for damages which could be set off against the transportation charges owed. Plaintiff's view is that Hinsch's Mileage Tariff provided the appropriate measure of damages for Great Northern's use of the diverted railroad car.

█ We believe that plaintiff's view of the measure of damages is incorrect. Hinsch's Mileage Tariff applies only to the authorized use of railroad cars. That tariff would provide the measure of payments owed to the Government if its car had been used by Great Northern to carry freight between Seattle, Washington, and Lathrop, California, in the course of returning it to Sharpe Army Depot as provided in the bill of lading. Instead, the car was used in an entirely unauthorized manner. This question arose in Empire Refineries, Inc. v. Guaranty Trust Co. of New York et al., 271 F. 668 (8th Cir. 1921), in which a tank car owned by the shipper and filled with gasoline was delivered to the railroad company for transportation to a consignee under a bill of lading which

4. Aetna Insurance Co. v. United States, 197 Ct.Cl. 713, 456 F.2d 773 (1972); Preuss v. United States, 188 Ct.Cl. 469, 412 F.2d 1293 (1969); Madden v. United States, 178 Ct.Cl. 121, 371 F.2d 469 (1967); Barrett v. United States, 177 Ct.Cl. 380, 367 F.2d 834 (1966).

entitled the shipper to payment for the use of the car on a mileage basis. The car was not delivered to the consignee, but was diverted by the railroad and not returned to the owner for three months. The railroad argued that the owner was entitled to recover only the amount provided for in the mileage tariff. The court, however, noted that:

> It does not appear from the record that the railway company had any authority to use the tank car except for the transportation of the gasoline to St. Louis. * * * We are of the opinion that the tariff provision of three-fourths of a cent per mile was not intended to apply and did not apply, except as the car moved pursuant to instructions of appellant; that is, from Cushing to St. Louis. *Id.* at 669.

The court went on to hold that the railroad was the bailee of the car, that the contract of bailment was for its use only in accordance with the bill of lading, and that the diversion of the car was a breach of contract which rendered the railroad company liable for all damages sustained by the owner, including the value of its use while detained. The value of the car's use in that case was determined by its fair rental value during the period that its owner was deprived of its use. See also, J. C. Francesconi & Co. v. Baltimore & O. R. R., 274 F. 687 (S.D.N.Y.1921); Gustafson v. Michigan Cent. R. R., 296 Ill. 41, 129 N.E. 516, cert. denied 256 U.S. 698, 41 S.Ct. 538, 65 L.Ed. 1177 (1921); New Orleans & N. E. R. R. v. J. H. Miner Saw Mfg. Co., 117 Miss. 646, 78 So. 577 (1918); and Atchison, T. & S. F. Ry. Co. v. Sun Drilling Co., 65 Okl. 239, 165 P. 1133 (1917).

■. Plaintiff points out that the *Empire Refineries* and *Gustafson* cases involved tank cars which carriers are not obligated to furnish shippers, whereas plaintiff would have been required by statute (49 U.S.C. § 1(11)) to provide defendant with a flatcar if one had been requested. Plaintiff thus · maintains that since the record lacks any proof of damages, the damages suffered by defendant are zero. We do not agree with this conclusion because the benefit to defendant of its ownership, i. e., the right to use its cars as it saw fit, was a valuable right. For example, if one owns a car, it may load or unload it at its pleasure without demurrage. Defendant under the circumstances of this case is entitled to payment for the reasonable value of the use of the car or similar cars. Monarch Refineries, Inc. v. Union Tank Car Co., 193 Okl. 110, 141 P.2d 556 (1943).

For the foregoing reasons, we deny plaintiff's motion for summary judgment and grant defendant's motion for summary judgment on its counterclaim, limited however, to the issue of liability. Under rule 131(c) (2), we refer the case to a trial commissioner to determine the amount of damages to which defendant is entitled. If the amount of damages defendant is entitled is less than the amount withheld by the defendant as offset, plaintiff will be entitled to judgment.