STADLER *v.* CIPRIAN.

1. LANDLORD AND TENANT—SURRENDER OF LEASE—STATUTE OF FRAUDS.

> Surrender of written lease may not be effected by subsequent oral lease (3 Comp. Laws 1929, § 13411), and was not effected by mutual consent where one joint lessee was not party to oral lease.

2. SAME—RENT—PAYMENT—BILLS AND NOTES.

> Notes given by one joint lessee pursuant to stipulation of discontinuance of actions brought for rent due did not constitute payment of rent where notes, treated merely as evidences of indebtedness by parties thereto, were not paid.

3. ACCORD AND SATISFACTION.

> To constitute an accord and satisfaction a settlement of a disputed claim there must have been a new and different thing substituted for existing claims and satisfaction or excuse for not carrying out the accord.

4. BILLS AND NOTES—PAYMENT—JOINT OBLIGATION—DISCHARGE.

> Negotiable note given by one joint debtor is not a payment of a preexisting indebtedness so as to discharge other joint debtor where note is not paid.

5. LANDLORD AND TENANT—RENT—JOINT LESSEE.

> Joint lessee who has not been voluntarily discharged from liability for rent, has not been affected by attempted accord and satisfaction by other joint lessee and has not paid rent, is liable therefor.

Appeal from Wayne; Toms (Robert M.), J. Submitted October 11, 1933. (Docket No. 28, Calendar No. 36,777.) Decided December 5, 1933.

Three actions of assumpsit by Harry L. Jewell against Joseph E. Ciprian and Katherine D. Ciprian for sums due under a lease. Cases consolidated for

trial. Discontinuance was had by stipulation. Action by William L. Stadler, plaintiff's assignee, against defendants for sums due under stipulation. Discontinuance of action on stipulation and reinstatement of consolidated cases with Stadler as plaintiff was had by further stipulation. Judgment for plaintiff Stadler against defendant Katherine D. Ciprian only. Plaintiffs appeal. Reversed, and new trial granted.

*Fildew & DeGree,* for plaintiffs.

*Ernest P. LaJoie,* for defendants.

Potter, J. February 1, 1927, defendants and lessees leased of Harry L. Jewell a single store on the northwest corner of Cass and Henry streets in the city of Detroit for eight years for an agreed rental of $34,650, payable $250 a month for six months; $325 a month for the next six months; $350 a month for the next three years; $375 a month for the next two years; and $400 a month for the last two years. The lease provided for cancellation at the end of 36 months upon 90 days' notice and payment by the lessees to the lessor of $5,000 in cash.

When the speculative mania stimulated by propaganda of prospectively rising values in real estate subsided, and fictitious values were deflated toward normalcy, defendants were unable to pay the stipulated rental for the property, and like many others, defaulted in the payment of rent provided in the lease. Suits at law were commenced by plaintiff Jewell against defendants, lessees, to recover unpaid rental due and unpaid, and for water rents or bills likewise due and unpaid. The first suit was commenced in July, 1929, and at a later time two other suits were instituted. By stipulation and

order the three suits at law were consolidated and all amounts due or to grow due under the lease up to and including the date of trial were to be included in and covered by such suits without the necessity of commencing further suits. To the several declarations filed, the general issue was pleaded by defendants and notice given that after the execution of the lease the same was by mutual consent of the parties thereto abrogated, rescinded and cancelled, and an oral lease of $250 a month entered into between the parties in substitution thereof, which $250 a month had been paid by defendants. These cases came on for trial April 16, 1930, but before any testimony was taken therein a stipulation of settlement and discontinuance was entered into as follows:

"Whereas the plaintiff and the defendants in the above-entitled cause have heretofore, to-wit: the 1st day of February, A. D. 1927, executed a lease for the premises known and described as a single store located at 2501 Cass avenue, Detroit, Michigan, and

"Whereas the defendants with the consent of the plaintiff sublet said premises to one Russell Hiner under a lease identical in terms, covenants and conditions with the lease hereinbefore described, and

"Whereas a *bona fide* dispute subsequently arose between the plaintiff and the defendants herein over the amount of rentals due under the terms of the lease between them hereinbefore described, and

"Whereas the plaintiff herein instituted the above entitled suits in the circuit court for the county of Wayne, and

"Whereas the plaintiff and the defendants are now desirous of amicably adjusting all matters in dispute between them,

"Now, therefore, in consideration of the mutual promises, covenants and conditions hereinafter contained,

"It is stipulated and agreed by and between the parties hereto and their respective attorneys as follows:

"*First:* The defendants agree to pay to the plaintiff the sum of $6,500 in the following manner:

"$2,000 in cash, receipt of which is hereby acknowledged and confessed;

"$1,000 20 days from the date hereof;

"$800 45 days from the date hereof;

"$700 75 days from the date hereof;

"$700 105 days from the date hereof;

"And the balance of $1,300 six months from the date hereof.

"*Second:* The defendants agree to execute and deliver to the plaintiff promissory notes evidencing the indebtedness hereinbefore described in the preceding paragraph, which notes shall mature on the dates specified in said preceding paragraph.

"*Third:* It is mutually understood and agreed by and between the parties hereto that the said lease entered into on the 1st day of February, A. D. 1927, be, and is hereby, terminated and the parties to such lease are hereby released and discharged from all further liability thereunder.

"*Fourth:* The defendants hereby agree to assign, transfer and set over to the plaintiff any and all of their right, title and interest in and to the lease executed by and between the said defendants and said Russell Hiner and the said plaintiff hereby agrees to assume said lease and save the defendants harmless from any and all further liability thereunder.

"*Fifth:* It is understood and agreed by and between the parties that any and all rentals accruing under the terms of the lease between the said defendants and said Russell Hiner up to and including the 1st day of April, A. D. 1930, shall be the property of the said defendants.

"*Sixth:* The said plaintiff agrees to execute and deliver to the defendants a separate instrument re-

leasing and discharging the said defendants from any and all liability, debts and accounts between them to the date hereof, excepting such amounts as are to become due under the terms of this stipulation and agreement.

"*Seventh:* It is further understood and agreed by and between the parties hereto that upon the failure of the defendants to pay the said promissory notes hereinbefore described as they mature, the plaintiff herein shall, upon application to the circuit court for the county of Wayne under and in pursuance to Act No. 36, Pub. Acts 1929 (3 Comp. Laws 1929, §§ 13903–13909), enter a judgment in his favor and against the defendants for the balance then due under the terms of this stipulation and execution may issue thereon as provided for under the statutes of the State of Michigan.

"*Eighth:* It is further stipulated and agreed by and between the parties hereto that the above-entitled causes and all ancillary suits in garnishment shall be discontinued without further costs to either party.

"Harry L. Jewell,
Plaintiff.
"Fildew & DeGree,
Attorneys for Plaintiff.
"Joseph E. Ciprian,
By Katherine D. Ciprian,
"Katherine D. Ciprian,
Defendants.
"Wm. Henry Gallagher,
Attorney for Defendants.
"Dated: April 16, 1930."

Approximately $6,100 was then due for back rents and $400 of the total of $6,500 was to apply on future rents. The $2,000 in cash mentioned in the stipulation of settlement and discontinuance above quoted was paid but the amounts agreed to be paid in the future and for which promissory notes were ex-

ecuted as stipulated therein were not paid nor were the notes given paid.

Subsequent to April 16, 1930, William L. Stadler as assignee of Harry L. Jewell, commenced a law action against defendants, based upon the claimed unpaid balance due upon the stipulation of settlement and notes given thereunder. Defendants appeared by present counsel and after denial of a motion for summary judgment made by plaintiff a stipulation was entered into in that case and the three prior cases discontinuing the latter case, setting aside the order entered in the three previous cases as of April 16, 1930; discontinuing the same and reinstating said three causes for trial. Proper orders were entered by the court. In the trial of the three cases, the defendants pleaded additional defenses to those already pleaded. Defendant Katherine D. Ciprian pleaded disability of coverture and that she was not liable in damages. Defendant Joseph E. Ciprian claimed he did not sign the stipulation of April 16, 1930, did not authorize his wife Katherine to do so in his behalf, did not authorize her to bind him by any agreement; he did not authorize his attorney to execute the stipulation in his behalf nor to bind him thereby. He alleged he had no knowledge of the stipulation until after it was signed; and expressly instructed his attorney to defend the cause and not settle it. As to both defendants, the plea covered full payment, accord and satisfaction, release and cancellation of the leasehold agreement, modification of the lease by mutual consent, former adjudication, plaintiff was not the real party in interest and had breached the leasehold agreement and had not and is not in a position to perform. Plaintiffs objected to the trial court inquiring into the claimed authority or lack of au-

thority of defendant's attorney and Mrs. Ciprian to bind defendant Joseph E. Ciprian upon the stipulation of April 16, 1930, assigning as their reason for such objection that such stipulation could only be set aside in a court of equity, and the agreement having been made in court could not be set aside either by a court of law or equity. Defendant Joseph E. Ciprian who did not sign the stipulation, testified:

"I did not ever give Mr. Gallagher or Mr. Fitzgerald or any one else in his office authority to settle or compromise this claim. I did not know that any one had signed my name to this document, Exhibits No. 1 and 2, in this case, this stipulation at the time it was signed. I did not give my wife authority to sign my name at that time to this paper. I did not know or was I made acquainted with the fact that there was any settlement or compromise being negotiated between my attorney or my wife and the attorneys, or the parties plaintiffs in this case, till quite a time after the signing of that instrument, on the 16th day of April, 1930. I was on the Pacific coast somewhere, my whereabouts was perfectly known to my wife and the office at Detroit."

There was judgment in favor of the plaintiff Stadler against the defendant Katherine D. Ciprian for $4,992 and costs. Judgment for costs against the plaintiff Jewell in favor of Katherine E. Ciprian. Judgment for costs against both plaintiffs in favor of Joseph E. Ciprian.

Plaintiffs appeal, claiming—

*First.* When one joint debtor enters into a stipulation of settlement of pending litigation and undertakes, together with defendants' attorney of record to sign the stipulation in behalf of the absent debtor upon which discontinuance of the case is

granted, the acceptance by the creditor of promissory notes of one of the debtors ascertaining the balance of the stipulated settlement, although the notes remain unpaid, does not constitute payment of the original indebtedness so as to release the other joint and several debtor who subsequently claims the settlement was made without his knowledge or authority.

*Second.* The fact that the creditor assigns such stipulation of settlement to a creditor of his own as conditional payment does not effect a release of the debtors, even where the original party set aside the discontinuance and reinstate the case upon the original indebtedness for trial.

*Third.* That such stipulated settlement may not be disavowed by one of the defendants and declared binding as to the other defendant.

Defendants and appellees make a counter-statement of the questions involved, claiming—

*First.* That where such settlement was entered into, payment of cash made and notes given by one joint lessee even though the stipulation provides the notes are to be signed by both lessees if the lessor negotiates the notes to a third party, such settlement is binding upon the lessor as well as upon the lessee whose notes were given and accepted.

*Second.* That the agreement to cancel the lease in full satisfaction of all rents and obligations accrued to date and an additional sum as consideration for the cancellation of future obligations is such a settlement as is binding upon the lessor and lessee signing the agreement.

*Third.* That the litigation having been discontinued and the lease cancelled by the lessor who accepts on the settlement from one joint lessee less

than the agreement calls for, discharges the other lessee from further obligation.

*Fourth.* That an attorney retained to defend pending litigation has no authority to settle the litigation by an agreement binding his client to a payment of future obligations without authority and without the knowledge of the client.

There is no dispute about the terms, execution and validity of the original lease. It is claimed this lease ·in writing had been surrendered by mutual consent and a new oral lease given and accepted in its place. 3 Comp. Laws 1929, § 13411, provides:

"No estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by some person thereunto by him lawfully authorized by writing."

"The law does not permit the title to rest in parol, nor does it allow anything which is evidenced by the deeds to be changed on parol testimony of promises, agreements or understandings. But by this doctrine, while the instruments of title are conceded to be indisputable, they are allowed to be set aside on parol evidence of the owner's admissions or statements, though this species of evidence is confessedly the least reliable of all which the law admits. The best evidence of title is thus allowed to be overcome and set aside by the weakest. A conversation misunderstood or falsely reported controls the most perfect chain of conveyances, and any estate—the most valuable in the land equally with the most worthless—is liable to be taken from the owner on the impression which a jury receives of the pre-

ponderance of evidence concerning words which witnesses may have imperfectly heard, or incorrectly understood, or the purport of which they may have unintentionally colored, or purposely wrenched from the real meaning in the mind of the speaker. The evils against which the statute of frauds was aimed are all here in their most threatening form." *Hayes* v. *Livingston,* 34 Mich. 384 (22 Am. Rep. 533).

"The verbal executory agreement between the parties was unquestionably void under the statute of frauds." *Ball* v. *Harpham,* 140 Mich. 661.

It is difficult to see how there was, when the suits were originally commenced, a *bona fide* dispute between the parties. There is no doubt but what an attempt was made to compromise the original suits and reduce the rent paid; $2,000 was paid down by defendants on the past due indebtedness and notes were given to evidence the indebtedness to grow due.

The stipulation provides for payment in the future of stated and agreed sums and the execution and delivery of notes evidencing such indebtedness. The giving of the notes did not constitute payment.

"It is believed that no principle of law is better established, at the present day, than that the giving a promissory note for goods sold, or for any other valuable consideration, is no payment, unless it is specially agreed to be so taken; and, in this respect, it makes no difference whether the note be given for a precedent debt, or for a debt created contemporaneously with the agreement; or whether it be the note of a third person, or of the party to the agreement. The authorities in support of this rule are so numerous, and the rule itself so firmly established, that a reference to many cases is deemed unnecessary." *Gardner* v. *Gorham,* 1 Doug. 507.

See *Swan* v. *Gregory,* 195 Mich. 457.

"The general and well-settled rule in this State is, that acceptance of the note of the debtor is not a payment, unless so agreed to by the parties, of the indebtedness existing and for which the note may be given." *Breitung* v. *Lindauer,* 37 Mich. 217.

"It is well settled that the giving of a promissory note is no payment of an indebtedness unless it is agreed that it is so accepted, and the evidence to establish payment must be positive and satisfactory." *Delaney Forge Co.* v. *The Winnebago,* 142 Mich. 84 (113 Am. St. Rep. 566).

If there was a *bona fide* dispute as to the terms of the existing lease and the stipulation was made for the purpose of settling such dispute, the fact that there was an agreement made is no evidence it was carried out. It is necessary in order that an accord and satisfaction may constitute a settlement of a disputed claim, there must have been, *first,* an agreement between the parties,—an accord,—a meeting of the minds of the parties upon the proposition, that something new and different be substituted for the existing claims of the parties; and *second,* there must have been a satisfaction or at least some legal excuse for not performing and carrying out the accord.

"It is the general and well-settled rule that an accord cannot be made a successful defense unless fully performed. It is not pretended that this was fully performed." *Burr's Damascus Tool Works* v. *Peninsular Tool Manfg. Co.,* 142 Mich. 417.

It may be conceded the attorneys for the defendant Joseph E. Ciprian had no power or authority to enter into the agreement in question, but the agreement was entered into on behalf of defendant

Joseph E. Ciprian by Katherine D. Ciprian. She either had authority to make the settlement and carry it out or she did not. It is claimed by defendant Joseph E. Ciprian she had no power and authority to make the settlement or to give the promissory notes. It is not claimed the notes have ever been paid. On the contrary, it is contended they have not been paid, and notwithstanding the notes have not been paid and the sums to grow due upon the stipulation of discontinuance have not been paid, nevertheless the defendants are discharged from liability.

"A bill or note executed by one or more but less than the whole number of joint debtors is not a payment of a preexisting indebtedness so as to discharge the other debtors, even in those jurisdictions where a negotiable bill or note of a debtor is ordinarily regarded as payment." 48 C. J. p. 615.

"In accordance with the general rules above stated a bill or note executed for the indebtedness of a partnership by the continuing partner or partners, in the firm name, after the dissolution of the partnership or the withdrawal of other partners, is ordinarily not a satisfaction of such indebtedness so as to discharge the retiring partners, except where the creditor agrees or consents to accept it as payment, and not even then when it is received under a mistake of fact." 48 C. J. p. 616.

"The general rule is that the note of a debtor will become a satisfaction without a special agreement, if the creditor transfers it to a third person, though there is some authority to the contrary. However, it would seem that if the creditor has regained possession of the original note, so that he will be in a position to surrender it, he may sue on the original indebtedness, for the question, and the only material question, is, not whether the bill has been

negotiated for value, but whether it is still outstanding, so that the parties are liable on it, notwithstanding a recovery upon the original claim.'' 21 R. C. L. p. 74.

The stipulation and settlement involved herein provides for the payment in cash of stipulated sums at future dates mentioned therein; that plaintiff agrees to execute and deliver to defendants a separate instrument releasing and discharging defendants from any and all liability, debts and accounts between them, excepting such amounts as are to become due under the terms of the stipulation and agreement and it further provides that upon the failure of defendants to pay the notes mentioned and described therein at maturity the plaintiff may have judgment thereon. It is evident, therefore, the parties themselves at the time the stipulation and agreement was entered into did not consider the execution of the promissory notes constituted payment or an accord and satisfaction. Joseph E. Ciprian was bound on the original lease. He has not participated in any proceedings to obtain release from liability. He has not been voluntarily discharged and he has not paid the rental to grow due thereon. The entire proceeding for a settlement and discontinuance of the original cases miscarried. By stipulation of the parties there are now pending the three original law suits.

The judgment of the trial court is reversed, with costs, and a new trial granted.

WEADOCK, SHARPE, NORTH, and FEAD, JJ., concurred with POTTER, J. McDONALD, C. J., and WIEST and BUTZEL, JJ., concurred in the result.