George P. BAKER et al., Plaintiffs,

v.

SOUTHEASTERN MICHIGAN SHIPPERS CO-OPERATIVE ASSOCIATION, a/k/a SEMCO, Inc., a Michigan corporation, Defendant.

Civ. A. No. 39090.

United States District Court, E. D. Michigan, S. D.

Sept. 28, 1973.

John G. Makris, Detroit, Mich., for plaintiffs.

Edward Sanders, Detroit, Mich., for defendant.

## MEMORANDUM OPINION

FEIKENS, District Judge.

Plaintiffs (trustees of the property of Penn Central Transportation Company) sue for freight charges totaling $22,773.19 incurred by defendant (SEMCO, Inc.) between October 10, 1969 and November 11, 1969. Defendant pleads a prior accord and satisfaction and, in the alternative, counterclaims against plaintiffs in the amount of $20,179.80 for damages to cargo sustained on February 21, 1969, and March 3, 1969. It is these damage claims which defendant contends were previously set off against the freight charges now sought by plaintiffs, the difference of $1,852.07 having been tendered and accepted on November 17, 1969.

### Accord and Satisfaction

It appears that SEMCO did try to arrange a mutual cancellation of accounts—the railroad's carriage charges against the shipper's claims for damages to cargo. Based on the facts elicited on these cross-motions for summary judgment, however, it is unclear whether these efforts came to a legally effective fruition.[1] There are genuine

---

1. "We recognize the Michigan rule that to constitute an accord and satisfaction, the tender of payment as being in full should be made in unequivocal terms so that the creditor in accepting the payment will do so understandingly. Durkin v. Everhot Heater Co., 266 Mich. 508, 513, 254 N.W. 187 [1934]." Allstate Ins. Co. v. Springer, 269 F.2d 805, 809 (6th Cir. 1959), cert. denied, 361 U.S. 932, 80 S.Ct. 370, 4 L.Ed.2d 353 (1960). See also Lafferty v. Cole, 339 Mich. 223, 228, 63 N.W.2d 432 (1954) (creditor must be "fully informed of the condition accompanying acceptance"). This is merely a corollary to the general principle that an accord requires a meeting of the minds of the parties in an agreement to substitute one type of performance for another. See Stadler v. Ciprian, 265 Mich. 252, 262, 251 N.W. 404 (1933).

Here the evidence indicates that defendant's offer of settlement was ambiguous and

and material issues of fact yet to be decided on this question, and if there were no other factors involved, this case would be inappropriate for summary disposition. This result is complicated and somewhat altered by two additional facts: (1) the freight charges involved here are covered by the Interstate Commerce Act[2] and (2) since these claims accrued the railroad has entered into reorganization under the Bankruptcy Act.[3]

First, plaintiffs argue that whether or not the facts make out an accord and satisfaction is in the end irrelevant, for Section 6(7) of the Interstate Commerce Act[4] absolutely prohibits and nullifies such arrangements. That section, prompted by a congressional purpose to eliminate secret preferences and kickbacks to shippers,[5] mandates strict adherence to published tariffs.[6] In applying this provision, the Supreme Court has held that a carrier may be compensated for its services only by payment in cash[7] or by check[8] or by way of judicial set-off against judgments due the shipper.[9] Any form of payment containing the potential for departure from the exact letter of the tariffs (such as the supplying of goods and services in exchange for carriage)[10] is prohibited.

Defendant argues that the exception for judicial set-offs, enunciated by the Court in Chicago & N. W. Ry. Co. v. Lindell, 281 U.S. 14, 50 S.Ct. 200, 74 L.Ed. 670 (1930), should be extended to a prior set-off of accounts (rather than judgments) concluded informally between the parties. Defendant cites no cases supporting this position. Burlington Northern Inc. v. United States, 462 F.2d 526 (Ct.Cl.1972), falls squarely within the *Lindell* exception. "According to plaintiff's reading, there can be no deduction of a damage claim against

equivocal. In a letter dated November 19, 1969, defendant's executive manager indicated that the off-setting of accounts and payment of the difference did not mean that SEMCO was declining payment of the freight charges, but that they would be paid as soon as the damage claims were approved by the railroad. Without further proof of the parties' intentions, this is insufficient to prove the existence (or nonexistence) of the claimed accord.

2. 49 U.S.C. § 1 et seq.

3. Reorganization of the Penn Central Transportation Company under 11 U.S.C. § 205 was initiated by an order of the District Court for the Eastern District of Pennsylvania on June 21, 1970 [hereinafter cited as Order No. 1], approving the railroad's petition and containing various provisions concerning its continued operation. Relevant materials may be found in the Corporate Reorganization Reporter (Penn Central).

4. "No carrier, unless otherwise provided by this chapter, shall engage or participate in the transportation of passengers or property, as defined in this chapter, unless the rates, fares, and charges upon which the same are transported by said carrier have been filed and published in accordance with the provisions of this chapter; nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any service in connection

therewith, between the points named in such tariffs than the rates, fares, and charges which are specified in the tariff filed and in effect at the itme; nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares, and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs." 49 U.S.C. § 6(7).

5. See, e. g., Atchison, T. & S.F. Ry. Co. v. Bouziden, 307 F.2d 230, 234 (10th Cir. 1962); Baker v. Prolerized Chicago Corp., 335 F.Supp. 183, 185 (N.D.Ill.1971). See also 49 U.S.C. § 3(1) (prohibiting preferences or prejudices).

6. "The lawful rate is that which the carrier *must* exact and that which the shipper *must* pay." Kansas City So. Ry. Co. v. Carl, 227 U.S. 639, 653, 33 S.Ct. 391, 395, 57 L.Ed. 683 (1913) (emphasis added).

7. Louisville & N.R. Co. v. Mottley, 219 U.S. 467, 477, 31 S.Ct. 265, 55 L.Ed. 297 (1911).

8. Fullerton Lumber Co. v. Chicago, M., St. P. & P.R. Co., 282 U.S. 520, 522, 51 S.Ct. 227, 75 L.Ed. 502 (1931).

9. Chicago & N.W. Ry. Co. v. Lindell, 281 U. S. 14, 17, 50 S.Ct. 200, 74 L.Ed. 670 (1930).

10. Chicago, I. & L. Ry. Co. v. United States, 219 U.S. 486, 496–497, 31 S.Ct. 272, 55 L. Ed. 305 (1911).

transportation charges except by adjudication of a court. But that is exactly the situation we have here." 462 F.2d at 529. The same is true of Yale Express System, Inc. v. Nogg, 362 F.2d 111 (2nd Cir. 1966), and Southern Pacific Co. v. Miller Abattoir Co., 454 F.2d 357 (3rd Cir. 1972).

On the other hand, at least two courts have squarely faced the issue of whether non-judicial set-offs are permissible under the Interstate Commerce Act, and have determined that they are not.

> "Another group of shippers contend that, prior to bankruptcy, there was an agreed settlement of mutual accounts between the Debtor and the shipper, with the result that the Debtor either owes money to the shippers, or is owed much less than is now being claimed by the Trustees. . . . To the extent that the Debtor's claims against these companies were based on freight charges, it is clear under the principles set forth previously that they were incapable of being discharged either by unilateral set-offs or by mutual agreement." In re Penn Central Transportation Co., 339 F.Supp. 603, 607 (E.D.Pa.1972).

This conclusion was specifically approved by the Third Circuit:

> "[One of the appellants] contends that under applicable Pennsylvania law, it extinguished its debt to the railroad by the nonjudicial set-off of a debt owed to it by the carrier . . . . Even assuming the validity of appellant's contention under Pennsylvania law, such a set-off would have been in express contravention of the Interstate Commerce Act. Indeed, the Act was so designed to prevent the kind of secret kickbacks which this type of practice could lead to." In re Penn Central Transportation Co., 477 F.2d 841, 845 (3rd Cir. 1973).

The reason for distinguishing between judicial and non-judicial set-offs is obvious. In the former case, there is no adjustment until the exact value of each party's claim has been authoritatively determined; in the latter instance, there is no guarantee that the debt off-set against the freight charges is worth the amount allowed. When the set-off is judicially supervised, there is little opportunity for collusion; when it is privately arranged, there is no such assurance. In short, it is the policy of the Act to permit payment of freight charges only in a manner offering little or no opportunity for evasion of the tariff. Judicial set-offs satisfy this requirement while private arrangements do not.

■ As a result, the accord and satisfaction pleaded by defendant, even if convincingly established, is inadeqaute to resist the trustees' cause of action. Because defendant interposes no other defenses,[11] plaintiffs are entitled to summary judgment for the undisputed portion of their claim—$22,039.89—minus the $1,852.07 previously paid. There is a genuine dispute of fact as to waybills 223588 and 228460, totaling $733.32, which must be resolved at trial.

### The Counterclaim

The railroad's reorganization raises a second question, namely whether the defendant may nevertheless recover in this court on its counterclaim. Initially, it should be noted that its claim is contested, both as to liability and damages. There has been presented no evidence from which this court can decide the issues raised, and therefore the defendant's cross-motion for summary judgment must be denied in any event.

Under *Lindell*, this court would ordinarily be authorized to proceed to judgment on the counterclaim and off-set any recovery thereunder against plain-

---

11. "The Consignee alleged the Railroad's breach both as a defense and as a counterclaim. The alleged breach, however, does not constitute a defense to the Railroad's claim for freight charges, but constitutes an independent claim." Southern Pacific Co. v. Miller Abattoir Co., 454 F.2d 357, 362 (3rd Cir. 1972).

tiff's recovery. The problem is to determine what effect the intervening reorganization may have on the defendant's cause of action. Two issues must be considered: (1) whether the action may be maintained in this court and (2) if so, whether this court is empowered to set off any recovery against that of plaintiff (*i. e.*, in effect to execute upon the judgment).

■ 1. *Set-off.* Taking the second point first, this court is immediately confronted with 11 U.S.C. § 205(a), which gives the bankruptcy court in a railroad reorganization "exclusive jurisdiction of the debtor and its property wherever located . . . ." "Property" in the bankruptcy setting includes a cause of action such as that asserted by the trustees in this case[12] and any recovery granted thereunder.[13] "Exclusive jurisdiction" is generally given a literal interpretation.[14] It follows that this court can exercise jurisdiction over the bankrupt's property, including a judgment or cause of action, only to the extent permitted by the bankruptcy court.[15]

■ That court, by its order of June 21, 1970, has authorized the trustees to institute and prosecute in any court suits for the recovery or protection of its property or rights,[16] and to settle or defend claims against the debtor,[17] including, in their discretion, "claims for loss, damage or delay to freight and baggage . . . ."[18]

"[B]ut no payment shall, without further order of this Court, be made by the Debtor in respect of any such actions, proceedings or suits on claims accruing prior to the date of this order except such claims as may be permitted to be paid by this order or by

other general orders hereafter entered herein, and such as constitute preferred claims under the Acts of Congress relating to bankruptcy; and no action taken by the Debtor in defense or settlement of such claims, actions, proceedings, or suits shall have the effect of establishing any claim upon, or right in, the property or funds in the possession of the Debtor that otherwise would not exist."[19]

Thus, it appears that this court is empowered to adjudicate the plaintiffs' claim, but that it has no authority to dispose of any recovery upon that claim, whether by way of set-off or otherwise. Even if this court may also hear defendant's counterclaim (a matter yet to be decided), it may not satisfy that judgment out of any of the debtor's property, including its judgment in this suit. Once "the claim is reduced to judgment [it] may then be presented to the bankruptcy court for proof and allowance." Thompson v. Texas Mexican Ry. Co., 328 U.S. 134, 141, 66 S.Ct. 937, 90 L.Ed. 1132 (1946).

■ 2. *Authority to Entertain Counterclaim.* The bankruptcy court has exclusive jurisdiction over not only the debtor's property, but over "any rights that may be asserted against it. These rights may be altered in any way thought necessary to achieve sound financial and operating conditions for the reorganized company, subject to the requirements of the Act." Callaway v. Benton, 336 U.S. 132, 147, 69 S.Ct. 435, 444, 93 L.Ed. 553 (1949). In a railroad reorganization the class of claims included within the scope of this power is very great. "The term 'claims' includes debts, whether liquidated or unliquidated, securities (other than stock and op-

---

12. 11 U.S.C. § 110(a)(6).

13. Meyer v. Fleming, 327 U.S. 161, 165, 66 S.Ct. 382, 90 L.Ed. 595 (1946).

14. See, e. g., In re New York, N.H. & H.R. Co., 457 F.2d 683, 689 (2nd Cir. 1972); In re Imperial "400" National, Inc., 429 F.2d 671, 676–677 (3rd Cir. 1970).

15. Cf. Warren v. Palmer, 310 U.S. 132, 60 S.Ct. 865, 84 L.Ed. 1118 (1940); Ex parte Baldwin, 291 U.S. 610, 54 S.Ct. 551, 78 L. Ed. 1020 (1934).

16. Order No. 1, *supra* note 3, ¶ 5.

17. *Id.*

18. *Id.*, ¶ 3B.

19. *Id.*, ¶ 5.

tion warrants to subscribe to stock), liens, or other interests of whatever character." 11 U.S.C. § 205(b).[20]

■ In essence, the bankruptcy court may modify in any way it feels necessary any right asserted against the debtor which might adversely affect the reorganization plan. The fact that it is raised in the form of a counterclaim to a suit instituted by the trustees is irrelevant. The counterclaim is not a defense to the original claim, but an independent claim which must be approached on its own merits.[21]

■ 11 U.S.C. § 108, authorizing certain set-offs and counterclaims in ordinary bankruptcy, is not binding in Chapter X corporate reorganization cases, where it could defeat the very purpose of the reorganization by depriving the debtor corporation of much needed working capital, thus endangering its ability to continue in operation.[22] In railroad reorganizations, where the public interest in survival of the enterprise is even more compelling, the reorganization court may not only enjoin set-offs,[23] but may go further and

". . . enjoin or stay the commencement or continuation of suits against the debtor until after final decree; and may, upon notice and for cause shown, enjoin or stay the commencement or continuance of any judicial proceeding to enforce any lien upon the estate until after final decree: *Provided,* That suits or claims

for damages caused by the operation of trains, busses, or other means of transportation may be filed and prosecuted to judgment in any court of competent jurisdiction and any order staying the prosecution of any such cause of action or appeal shall be vacated." 11 U.S.C. § 205(j).

■ The Penn Central reorganization court has enjoined certain set-offs,[24] which the parties seem to have assumed are applicable in this case, though the assumption is a rather questionable one. This point is mooted, however, by the court's broader command that:

"All persons and all firms and corporations, whatsoever and wheresoever situated, located or domiciled, hereby are restrained and enjoined from interfering with, seizing, converting, appropriating, attaching, garnisheeing, levying upon, or enforcing liens upon, or in any manner whatsoever disturbing any portion of the assets, goods, money, deposit balances, credits, choses in action, interests, railroads, properties or premises belonging to, or in the possession of the Debtor as owner, lessee or otherwise, or from taking possession of or from entering upon, or in any way interfering with the same, or any part thereof, or from interfering in any manner with the operation of said railroads, properties or premises or the carrying on of its business by the Debtor under

20. Also cf. 11 U.S.C. § 205(b): "The term 'creditors' shall include, for all purposes of this section all holders of claims of whatever character against the debtor or its property, whether or not such claims would otherwise constitute provable claims under this Act . . . ."

21. See note 11, *supra.*

22. Lowden v. Northwestern National Bank, 298 U.S. 160, 163–166, 56 S.Ct. 696, 80 L. Ed. 1114 (1936); In re Yale Express System, Inc., 362 F.2d 111, 116–117 (2nd Cir. 1966); Susquehanna Chemical Corp. v. Producers Bank & Trust Co., 174 F.2d 783, 787 (3rd Cir. 1949).

23. Penn Central Transportation Co. v. National City Bank of Cleveland, 315 F.Supp. 1281, 1283–1284 (E.D.Pa.1970), affirmed sub nom In re Penn Central Transportation Co., 453 F.2d 520, 522–523 (3rd Cir. 1972).

24. "All persons, firms and corporations, holding collateral heretofore pledged by the Debtor as security for its notes or obligations or holding for the account of the Debtor deposit balances or credits be and each of them hereby are restrained and enjoined from selling, converting or otherwise disposing of such collateral, deposit balances or other credits, or any part thereof, or from off-setting the same, or any thereof, [sic] against any obligation of the Debtor, until further order of this Court." Order No. 1, *supra* note 3, ¶ 10 (footnote omitted).

the order of this Court and from commencing or continuing any proceeding against the Debtor, whether for obtaining or for the enforcement of any judgment or decree or for any other purpose, provided that suits or claims for damages caused by the operation of trains, buses, or other means of transportation may be filed and prosecuted to judgment in any Court of competent jurisdiction . . . ."[25] Because of the bankruptcy court's exclusive jurisdiction over such matters, that mandate is binding upon this court.

Thus the ultimate issue is whether the proviso in subsection (j) of the statute, incorporated verbatim in the court's order, applies to defendant's counterclaim. If it constitutes a claim "for damages caused by the operation of trains, busses, or other means of transportation," it is cognizable in this court. If not, it falls within the scope of the order and its prosecution here is effectively enjoined.

There is relatively little case law interpreting the proviso, and what there is is either contradictory or inconclusive. Certainly "[t]he language of the proviso in § 77(j) is sufficiently broad to include all tort or contract claims whatsoever that arise from the operation of the trains or busses of the debtor." 5 Collier on Bankruptcy ¶ 77.12 at 516 (14th ed. 1970). Such a literal reading of the statute would clearly place SEMCO's counterclaim within the proviso. On their facts, several cases from the New York courts appear to support this result. See Erie R. Co. v. William J. Pfeil, Inc., 256 App.Div. 465, 11 N.Y.S. 2d 155 (1939) (counterclaim for damage to shipment of beans caused by salt in car held to be within proviso; counterclaim for breach of contract to construct

a side track was outside proviso); Yeckes-Eichenbaum, Inc. v. McCarthy, 264 App.Div. 403, 35 N.Y.S.2d 527 (1942) (action for breach of contract of carriage within proviso); Liquid Carbonic Corporation v. Erie R. Co., 171 Misc. 969, 14 N.Y.S.2d 168 (1939) (damage to cargo caused by failure to provide proper unloading facilities held to be within proviso). On the other hand, an opinion of the Seventh Circuit Court of Appeals of about the same vintage discusses the proviso at length, and concludes that Congress intended only to exempt personal injury claims. In re Chicago & E. I. Ry. Co., 121 F.2d 785, 789 (7th Cir. 1941), cert. denied sub nom. Chicago & E. I. Ry. Co. v. Gourley, 314 U.S. 653, 62 S.Ct. 102, 86 L.Ed. 523 (1941). Two other federal courts have effectively avoided the issue in personal injury cases, which are uniformly recognized as falling within the proviso. Munnelly v. Farrell, 317 F.Supp. 329 (S.D.N.Y.1970); Rodabaugh v. Denny, 24 F.Supp. 1011 (S.D.N.Y.1938). Finally, one other federal court seemed in passing to endorse the personal injury restriction, but went on to hold that a penalty for violation of the Safety Appliance Act is outside the proviso without ever defining its exact scope. United States v. Dorigan, 236 F.Supp. 106, 108 (E.D.N.Y.1964).

It seems a sound rule of construction to adopt the simplest, most obvious interpretation of statutory language, unless there are clearly shown, persuasive reasons for doing otherwise.[26] A court may reasonably adopt a narrower or broader construction when to do so would better effectuate legislative intent.[27] This imperfectly expressed intent may have been actual (often discovered in legislative history) or it may be implied (a euphemism for the judicial

---

25. *Id.*, ¶ 9.

26. "True, courts in the interpretation of a statute have some scope for adopting a restricted rather than a literal or usual meaning of its words where acceptance of that meaning would lead to absurd results, . . . or would thwart the obvious purpose of the statute. . . . But courts are not free to reject that meaning where no

such consequences follow and where, as here, it appears to be consonant with the purposes of the Act as declared by Congress and plainly disclosed by its structure." Helvering v. Hammel, 311 U.S. 504, 510–511, 61 S.Ct. 368, 371, 85 L.Ed. 303 (1941).

27. "It is well established, however, that a meaning not conveyed by the literal language may be given in order to carry out the legis-

rounding off of the law's sharp corners). But however the burden of justifying a non-literal interpretation is formulated, it has not been satisfied here. There is no legislative history to indicate that Congress intended something other than what it appeared to say. There is no evidence of overriding policies or dysfunctional effects which would permit this court to conclude that Congress should or would have intended something else, and to impute to it such intent *nunc pro tunc*.

Indeed, to the extent there are such factors, they weigh in favor of a literal reading of the proviso. First, it would not alter the bankruptcy court's power to rule on the allowance of such claims, thus producing no interference with any part of the reorganization plan (which is the primary *raison d'être* for this section of the statute).

Second, the policy behind the subsection (j) proviso itself appears to be similar to that behind 28 U.S.C. § 959, permitting suit without leave of the bankruptcy court respecting acts or transactions of the trustees in "carrying on" the debtor's business. Referring to a predecessor of that section, the Supreme Court observed that:

"This act abrogated the rule that a receiver could not be sued without leave of the court appointing him, and gave the citizen the unconditional right to bring his action in the local courts, and to have the justice and amount of his demand determined by the verdict of a jury. He ceased to be compelled to litigate at a distance, or in any other forum, or according to any other course of justice, than he would be entitled to if the property or business were not being administered by the Federal court.

"The object of the section is manifest, and it is equally plain that that object would be open to be defeated if the receiver could remove the case at his volition. The intention to permit

this to be done cannot reasonably be imputed to Congress, and, moreover, such a right would be inconsistent with the general policy of the act." Gableman v. Peoria, D. & E. Ry. Co., 179 U.S. 335, 338, 21 S.Ct. 171, 172, 45 L.Ed. 220 (1900).

Such a rationale suggests no basis for distinguishing between claims for property damage and those for personal injury. Judge Patterson, in the *Rodabaugh* case, reached a similar conclusion in an analogous situation:

"In a very broad sense every action against a railroad company wherein money damages are demanded is an action for 'damages caused by the operation of trains, busses or other means of transportation'. The primary business of a railroad company is to operate trains, and all its activities are incidental to the operation of trains. The words of the proviso are not to be construed so broadly; nor on the other hand, should they be construed so narrowly as to defeat the purpose of Congress in enacting the proviso. Congress doubtless had in mind the fact that the district court in charge of reorganization might be a long distance from the court in which an action for damages might be brought, and that the obtaining of consent of the court in charge of reorganization might be a hardship on a claimant. This is a factor in favor of a liberal interpretation of the proviso. There is no apparent reason for a distinction between the case of a plaintiff who is struck by a moving train and the case of a plaintiff who was injured by the collapse of a scaffold while working as an employee of the railroad. I am of opinion [sic] that the present case is one 'for damages caused by the operation of trains, busses or other means of transportation' and that the prosecution of the action in the usual manner has not been re-

lative intention, if the words used will bear such meaning." United States v. Brennan, 94 U.S.App.D.C. 184, 214 F.2d 268, 270

(1954), cert. denied, 348 U.S. 830, 75 S.Ct. 53, 99 L.Ed. 655 (1954).

strained by the reorganization court." 24 F.Supp. at 1012.

Finally, it must be remembered that defendant presses its claim in this court only in response to one initiated here by the trustees themselves. To hear the plaintiffs' case but not the defendant's, when both might easily be disposed of in one action, seems not only an uneconomic allocation of judicial resources but also an unduly harsh and useless result. As a general rule, statutes should be construed so as to avoid the imposition of such arbitrary and meaningless hardships.[28]

For these reasons, summary judgment will enter in favor of plaintiffs for the undisputed portion of their claim. The remainder of their claim, as well as defendant's counterclaim, may be prosecuted in this court. However, this court is without power to effect a set-off of any amounts recovered pursuant thereto.

An appropriate order may be submitted.

---

28. "The courts draw back from the construction of an ambiguous statute that would lead to unjust results, just as nature draws back from the consistency of one of its laws that would encase in ice fish at the bottom of a river." Voris v. Gulf-Tide Stevedores, 211 F.2d 549, 552–553 (5th Cir. 1954), cert. denied, 348 U.S. 823, 75 S.Ct. 37, 99 L.Ed. 649 (1954).