CHEBOYGAN COUNTY ROAD COMMISSION v AUTO-OWNERS
INSURANCE COMPANY

Docket No. 77-4467. Submitted November 3, 1978, at Grand Rapids.—
Decided December 28, 1978. Leave to appeal denied, 406 Mich
909.

The Cheboygan County Road Commission stored a quantity of
salt on property which it owned in the Indian River area. The
salt was owned by the State Highway Department. Salt seeped
into the ground and contaminated the water supply of several
persons in the vicinity. The highway department and the
county road commission agreed to divide equally the cost of
drilling new wells for the affected residents. The road commis-
sion then commenced an action against Auto-Owners Insurance
Company, seeking to recover, pursuant to a contract of insur-
ance, one-half of the total amount of the cost of the drilling.
Cheboygan Circuit Court, Philip J. Glennie, J., found that a
valid settlement contract existed wherein the plaintiff agreed to
accept a lesser amount as full compensation for its claim. The
plaintiff appeals. *Held:*

1. A letter from the insurance company to the plaintiff, after
the plaintiff's attorney sent a letter to the insurance company's
attorney proposing an open-ended formula for dividing the
plaintiff's liability between the plaintiff and the insurance
company, was a counter offer and not an acceptance of the
plaintiff's earlier proposal. The plaintiff's claim was not barred
by an accord and satisfaction.

2. The insurance company waived its right to assert, as an

REFERENCES FOR POINTS IN HEADNOTES
[1] 17 Am Jur 2d, Contracts §§ 39, 62.
Difference between offer and acceptance as regards place of pay-
ment or of delivery as variance preventing consummation of
contract. 3 ALR2d 256.
[2] 43 Am Jur 2d, Insurance §§ 754-756.
44 Am Jur 2d, Insurance §§ 1944, 1946.
[3] 61 Am Jur 2d, Pleading §§ 127, 395.
[4] 44 Am Jur 2d, Insurance §§ 1553, 1554.
Liability insurance: insurer's assumption of or continuation in
defense of action brought against the assured as waiver or estop-
pel as regards defense of noncoverage or other defense existing at
time of accident. 38 ALR2d 1148.
[5] 1 Am Jur 2d, Accord and Satisfaction §§ 1, 27.

affirmative defense, the plaintiff's noncompliance with a condition precedent by failing to have that defense included in the pretrial summary.

Reversed and remanded.

BEASLEY, P.J., dissented. He would hold that the record supports the trial court's conclusion that the plaintiff's attorney, acting within the authority given him by the plaintiff, had negotiated, in good faith, a binding accord and satisfaction with the insurance company. He would affirm.

OPINION OF THE COURT

1. CONTRACTS—ACCEPTANCE—OFFER—DIFFERING TERMS—REJECTION OF OFFER.

A proposal to accept an offer which contains terms differing from the offer is a rejection of the offer.

2. INSURANCE—CONDITIONS PRECEDENT—AFFIRMATIVE DEFENSE—NON-COMPLIANCE—COURT RULES.

An insurance company, wishing to use as a defense a plaintiff's failure to comply with a condition precedent to recovery under the terms of the contract, must plead noncompliance with the condition precedent as an affirmative defense (GCR 1963, 112.4).

3. PLEADING—AFFIRMATIVE DEFENSES—WAIVER—COURT RULES.

Affirmative defenses which are not asserted in the pleadings are waived (GCR 1963, 111.3).

4. PLEADING—PRETRIAL SUMMARY—AFFIRMATIVE DEFENSES—WAIVER —COURT RULES.

A defendant insurance company waived its right to assert as an affirmative defense a plaintiff's noncompliance with a condition precedent where the defendant failed to have that defense included in the pretrial summary (GCR 1963, 301.3).

DISSENT BY BEASLEY, P.J.

5. ACCORD AND SATISFACTION—SETTLEMENT OF DISPUTED CLAIM— AGREEMENT.

*It is necessary in order that an accord and satisfaction may constitute a settlement of a disputed claim that there must have been, first, an agreement between the parties (an accord) that something new and different be substituted for the existing claims of the parties, and second, there must have been a*

*satisfaction or at least some legal excuse for not performing
and carrying out the accord.*

*Lyon, Mellon & Conboy,* for plaintiff.

*Carpenter, Fenner, Barney & Hofmann,* for defendant.

Before: BEASLEY, P.J., and D. E. HOLBROOK and
G. R. COOK,* JJ.

D. E. HOLBROOK, J. The Cheboygan County Road
Commission stored a quantity of salt on property
which it owned in the Indian River area. The salt
was owned by the State Highway Department. Salt
seeped into the ground water and contaminated
the water supply of several persons in the vicinity.
The highway department and the road commission
agreed to divide equally the cost of drilling new
wells for the affected residents. At the date of trial
the cost of such drilling totalled $30,911.95. The
road commission sought to recover half of this
amount from the defendant pursuant to a contract
of insurance. After a bench trial the court found
that a valid settlement contract existed wherein
the road commission agreed to accept $6,120.93 as
full compensation for its claim. We disagree with
that finding.

The purported offer in this case is contained in a
letter from the road commission's attorney to the
insurance company's attorney dated November 27,
1972. That letter proposed an open-ended formula
by which the insurance company and the road
commission would split the road commission's lia-
bility. The letter did not mention future claims.

The insurance company responded with a letter
dated April 12, 1973, which offered a fixed dollar

---

* Circuit judge, sitting on the Court of Appeals by assignment.

amount in return for which the road commission was to release the insurance company from all present and future liability.

It is elementary that a proposal to accept an offer which contains terms differing from the offer is a rejection. *Board of Governors of Wayne State University v Building Systems Housing Corp,* 62 Mich App 77; 233 NW2d 195 (1975). The insurance company's letter of April 12, 1973, was a counter-offer. It did not purport to accept the terms of the November 27, 1972, letter. It offered new and different terms.

The plaintiff's claim is not barred by accord and satisfaction.

The trial court also found that recovery under the contract was precluded by failure to establish compliance with a condition precedent contained in the insurance contract which was not waived by the defendant. The contract of insurance contained a clause requiring the company's written authorization before payment of claims which were not judgment claims.

At trial the defendant moved to include noncompliance with the "written authorization" clause as an affirmative defense. The plaintiff objected saying that it was only prepared for trial on the one issue stated in the pretrial summary. The trial court ruled that the affirmative defense could not be added but that it would allow testimony concerning compliance with the same contract provision. In so ruling the court held that the plaintiff had the duty to plead and prove compliance with all conditions precedent to recovery contained within the insurance contract. This is contrary to GCR 1963, 112.4 which states specifically that an insurance company must plead noncompliance with a condition precedent as an affirmative de-

fense. GCR 1963, 111.3 provides that affirmative defenses which are not asserted in the pleadings are waived. The defendant further waived its right to assert noncompliance with the condition precedent as an affirmative defense by failing to have that defense included in the pretrial summary. *Farida v Zahar,* 50 Mich App 137, 143; 212 NW2d 739 (1973), GCR 1963, 301.3.

In the pretrial summary the defendant specifically admitted liability under the policy but claimed that recovery was precluded by the existence of a settlement contract. The only issue at trial, therefore, should have been whether or not a valid settlement contract existed. We have found that a settlement contract did not exist. We reverse and remand with the instruction that a judgment in the amount of $15,455.97 be entered for the plaintiff.

Reversed and remanded, costs to appellant.

G. R. Cook, J., concurred.

Beasley, P.J. *(dissenting).* I respectfully dissent.

After a bench trial, the trial judge filed a written opinion in which he made findings of fact and conclusions of law from which he awarded judgment to plaintiff in the sum of $6,120.93.

His findings of fact are supported by competent evidence and his conclusions of law are not clearly erroneous. I do not perceive the clear error that would cause reversal. I would vote to affirm.

Specifically, the majority states that in a letter dated November 27, 1972, the attorney for plaintiff made a written offer on behalf of plaintiff to settle with defendant insurance company. The majority says that defendant responded with a letter dated April 12, 1973, which was in the nature of a

counter-offer. This conclusion seems hasty. By its terms, the November 27, 1972, letter refers to possible settlements with potential claimants, whereby new wells would be drilled at an estimated cost of $2,000 per well. The settlement offer is that upon furnishing to defendant of a release from a potential claimant, defendant will pay to plaintiff one-half of plaintiff's share of the settlement cost.

The November 27, 1972, letter and the transcript make it clear that defendant was aware that plaintiff had made an agreement with the State Highway Department to share equally the settlement costs.

This November 1972 offer should be viewed in the light of the testimony which indicated continuing communication between the attorney for plaintiff and the attorney for defendant regarding settlement with the individual claimants. For example, plaintiff's attorney testified:

"You have to understand this—every time a new claim arose, every time there was a new development of any kind, Mr. Gillett was contacted, the matter was discussed, and during the whole series of events in the series of conversations, the matter of dispute between Auto-Owners and the Cheboygan County Road Commission was also discussed. So I had many replies, but verbal; but this one is the first written one. You have to understand, the amounts involved were changing daily, or weekly, because while each individual claim was separate from the others, the amounts involved were different."

Defendant's April 1973 response was an acceptance of the November 1972 proposed settlement formula. Since defendant was aware of plaintiff's agreement to share the cost of the settlements

with the State Highway Department, agreeing to contribute one-quarter of the total of $23,400, or $5,850, was exactly the same thing as accepting an offer to "underwrite" one-half of the road commission cost.

Consequently, as far as the settlement formula was concerned, defendant's April 1973 letter response was not a counter-offer, but, rather, an acceptance of plaintiff's offer of a settlement formula for the plaintiff's costs of settlement with the various individual claimants.

The majority states the letter did not mention future claims. As indicated, I do not so interpret it. The November 1972 letter refers to wells that had not yet been dug and which were to be dug only on obtaining a release from a potential claimant. I interpret the November 1972 letter as a unilateral, continuing offer by plaintiff to settle coverage under the insurance policy. Obviously, the attorneys for the parties treated it as a settlement. The April 12, 1973, letter response by the attorney for defendant constituted an acceptance of the claims that had been settled to that date. In the same letter, defendant sought a release for any future claims, but, in fact, defendant did not insist upon it. On the contrary, defendant accepted the settlement formula when further claims were made, as evidenced by defendant's tender of a settlement check for an increased amount, namely, $6,120.93. The tender of the settlement check by defendant was *not* conditional upon a release of any possible future claims.

The trial court heard the testimony and reviewed the instruments. He then found an accord and satisfaction between plaintiff and defendant regarding defendant's obligations under the policy. I do not find this to be erroneous under the defini-

tion which the Supreme Court set forth in *Stadler v Ciprian:*[1]

"It is necessary in order that an accord and satisfaction may constitute a settlement of a disputed claim, there must have been, *first,* an agreement between the parties,—an accord,—a meeting of the minds of the parties upon the proposition, that something new and different be substituted for the existing claims of the parties; and *second,* there must have been a satisfaction or at least some legal excuse for not performing and carrying out the accord."

Further, he specifically found that plaintiff, Cheboygan County Road Commission, knew of the written offer its attorney made on November 27, 1972, and permitted its attorney to go ahead and negotiate settlements in conjunction with the attorney for defendant.

There is nothing in this record to indicate anything other than that plaintiff's attorney negotiated settlements in good faith believing he had authority to do so.

The attorneys for plaintiff and defendant agreed there was a genuine issue under the insurance policy as to whether seepage of salt into the water supply system was an *occurrence* within the coverage.[2]

The belated decision by plaintiff to go back on the agreement with defendant which its attorney had undertaken was ineffectual. I would hold that plaintiff was bound by its attorney's actions rendered in good faith on behalf of plaintiff within the scope of his retainer. Similarly, defendant was bound by the actions of its counsel with respect to the settlement.

---

[1] 265 Mich 252, 262; 251 NW 404 (1933).

[2] This insurance coverage issue was never litigated on the merits.

Contrary to the position of the majority, I do not find defendant offering new and different terms. The record supports the conclusion that a binding accord and satisfaction was made.

I would affirm the trial court's entry of judgment in favor of plaintiff in the sum of $6,120.93.